[Civ. No. 27305. Second Dist., Div. Two. Mar. 2, 1964.]

JACK BALDING, Plaintiff and Appellant, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., Defendants and Respondents.

Myron L. Garon, Leroy W. Rice and George Olshausen for Plaintiff and Appellant.

Robert W. Walker, Matthew H. Witteman, Parker, Stanbury, McGee, Peckham & Garrett and Raymond G. Stanbury for Defendants and Respondents.

KINCAID, J. pro tem.*—Appeal is taken herein by plaintiff from a judgment in favor of defendant railroad

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

company following a nonjury trial. A written memorandum opinion was filed by the trial judge together with findings of fact, conclusions of law and the judgment.

The findings of fact found generally that on the night of January 28, 1956, plaintiff drove his automobile in a southerly direction upon Carmenita Road, approaching a railroad crossing upon which trains were operated by defendant. At this same time a defendant-operated train was proceeding in an easterly direction along the right of way towards its intersection with Carmenita Road. A collision occurred between plaintiff's automobile and defendant's train, proximately resulting in injury and damage to plaintiff. The defendant was negligent at the time and place in question in that its train was traveling at an excessive rate of speed in the circumstances, wigwags installed at the crossing failed to operate upon the approach of the train, the circumstances were such as to give defendant notice before the accident that such wigwags were defective and the horn or whistle on the train was not sounded when the train was as far from the crossing as the rules of the defendant company required. The horn or whistle was sounded, however, as the train approached the crossing and the bell on the locomotive was sounded as required by law. Also the headlight of the train was lighted as the train approached and entered the crossing. The defendant was not otherwise negligent. The failure of defendant to maintain crossing gates at Carmenita was not a violation of any duty owed by the defendant to the plaintiff. No negligence on the part of defendant was a proximate cause of the collision between plaintiff's automobile and the train, or of any of plaintiff's injuries or losses. The failure to maintain crossing gates was not a proximate cause of plaintiff's injuries.

The court further found that plaintiff was negligent in the operation of his automobile as he approached the crossing. He first saw the defendant's train when he was 35 to 50 feet from the tracks. Plaintiff was negligent as a matter of law and as a matter of fact prior to his first seeing the train in that knowing he was approaching an unfamiliar railroad crossing, he drove his automobile at not less than 35 miles per hour, did not apply his brakes to reduce his speed, and did not keep his vehicle under sufficient control to avoid, or to stop for, an oncoming train. Plaintiff did not know whether or not there were mechanical signals protecting the crossing. He did not observe any automatic signals; he did not rely

upon automatic signals, either active or inactive. The negligence on plaintiff's part was the proximate cause of the collision with the train and of all injuries, losses and damage sustained by plaintiff as a result thereof.

Plaintiff argues that the trial court erred in holding plaintiff guilty of contributory negligence as a matter of law and that the court's finding of contributory negligence of plaintiff as a matter of fact was prejudicially influenced by the alleged error as to the finding of contributory negligence as a matter of law. In support of his position plaintiff largely relies upon the somewhat detailed phraseology of the memorandum opinion of the trial judge. He relies upon the rule that although the reasons reflected in an opinion of the trial court are not ordinarily effective to impeach the written findings and judgment, an appellate court may consider that opinion in order to discover the process of reasoning by which the trial judge arrived at his conclusions. (*Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 750 [47 P.2d 273] ; *Ehrenreich* v. *Shelton*, 213 Cal.App.2d 376, 378 [28 Cal. Rptr. 855].)

While an appellate court is permitted to examine a memorandum opinion of the trial judge for the purpose of aiding in the interpretation of the findings and conclusions (*Moore* v. *Ojai Improvement Co.*, 152 Cal.App.2d 124, 128 [313 P.2d 47]), the function of a trial court opinion is limited. Although such an opinion may aid the appellate court to ascertain the process by which a judgment has been reached, it will not be used in determining whether or not the verdict of the jury or the findings of the court are supported by the evidence. The question that concerns the reviewing court is whether or not the final decision, judgment or order is correct and not whether the reasons expressed in the opinion are in harmony with the results reached or whether they sustain the decision. Nor may any antecedent expression of the judge, whether casual or cast in the form of an opinion, in any way restrict his absolute power to declare his final conclusion by filing the findings of fact, conclusions of law and judgment provided for by the Code of Civil Procedure. (*Ciriniconi* v. *Green*, 175 Cal.App.2d 812, 815 [346 P.2d 867] ; *Stone* v. *Los Angeles County Flood Control Dist.*, 81 Cal.App.2d 902, 907 [185 P.2d 396].)

If one finding, sustained by sufficient evidence, will support the trial court's judgment, an appellate court will presume that the judgment was predicated on such finding, and questions relative to other findings become immaterial

upon appeal and may be disregarded. (*Logan* v. *Forster*, 114 Cal.App.2d 587, 602 [250 P.2d 730]; *Bolen* v. *Parks*, 149 Cal.App.2d 460, 468, 469 [308 P.2d 521].) ■ As stated in *American National Bank* v. *Donnellan*, 170 Cal. 9, 15 [148 P. 188, Ann.Cas. 1917C 744] : "[I]t is only when a judgment rests upon some particular finding for its validity and support that the lack of sufficient evidence to support such finding, or the contradictoriness between two findings, treating of the same essential matter, will necessitate a reversal of the case. Or, in other words, however unsupported, however lame, however inconclusive, any number of the findings may be, if in any case there be one clear, sustained and sufficient finding upon which the judgment may rest, every presumption being in favor of the judgment, it will be here concluded that the court did rest its judgment upon that finding, or those findings, and the others may and will be disregarded." (Cf. *Brewer* v. *Simpson*, 53 Cal.2d 567, 584 [2 Cal.Rptr. 609, 349 P.2d 289]; *Carlton* v. *Castranova*, 189 Cal.App.2d 409, 413, [11 Cal.Rptr. 258]; *Huebotter* v. *Follett*, 27 Cal.2d 765, 770 [167 P.2d 193]; *Estate of Goodhew*, 174 Cal.App.2d 75, 81 [344 P.2d 63].)

■ The finding of the court that plaintiff, under the evidence herein, was negligent as a matter of fact and that such negligence proximately caused the happening of the accident and the sustaining of his injuries and losses is separate from and not contradictory to its finding that plaintiff also was contributorily negligent as a matter of law. Therefore if the evidence herein sufficiently supports the court's finding of such negligence on the part of plaintiff as a matter of fact, it is immaterial whether the additional finding of negligence as a matter of law is so supported.

■ A review of the record herein brings us to the conclusion that the finding that plaintiff was negligent as a matter of fact, and that such negligence proximately caused the accident and all injuries, losses and damages sustained by plaintiff as a result thereof is amply supported by the evidence.

■ The duties and degree of care to be exercised by the driver of a vehicle knowingly approaching a railroad track are set forth in *Will* v. *Southern Pacific Co.*, 18 Cal.2d 468, 474, 475 [116 P.2d 44] : "The tracks of a steam railroad are a sign of danger, and one intending to cross them must avail himself of every opportunity to look and listen. ■ The degree of care to be exercised is dependent upon the circum-

stances in the particular case. ▇ If there are obstructions to the view, one is required to take a greater amount of care. [Citation.] However, the same quantum of care is not required of a traveler approaching a railroad crossing at which a bell or signal has been erected to warn him of danger. [Citations.] ▇ A railroad company will not be permitted to encourage persons to relax their vigil concerning the dangers that lurk in railroad crossings by assuring them, through the erection of safety devices, that the danger has been removed or minimized, and, at the same time, to hold them to the same degree of care as would be required if those devices had not been provided. [Citations.]

▇ ''This does not mean that a person approaching a guarded crossing may blindly rely upon the absence of warning by a watchman, or the silence of an automatic signal, and proceed without further regard for his own safety. Knowing that he is approaching a point of danger he must still use reasonable care in looking and listening for any approaching trains. Failure to do so constitutes contributory negligence, as a driver may not cross tracks in reliance upon the safety appliances installed by the railroad with complete disregard for his own safety and recover damages for injuries sustained by reason of his own failure to use reasonable care. [Citation.]'' (See *Startup* v. *Pacific Electric Ry. Co.*, 29 Cal.2d 866, 871 [180 P.2d 896]; *Eastman* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 51 Cal.App.2d 653, 665, 666 [125 P.2d 564].)

▇ Plaintiff concedes that the occasion in question was the first time he had traversed Carmenita Road. He did not know that any railroad tracks crossed it or whether warning signals or safety devices there existed. He therefore was not relying on them and their failure to be properly effective could not have encouraged him to relax his required vigilance. The degree of care to be exercised by him under the circumstances so existing was that required of a motorist knowingly approaching an unguarded railroad crossing.

▇ The evidence shows that the train came from the west travelling east. The track looking westward was straight for a distance of some 3,445 feet from the crossing. The track was straight for miles easterly. From the nearest rail the view to the west was over 4,000 feet. From a distance of 100 feet north from the nearest rail toward the direction from which plaintiff drove his automobile, there was no obstruction to the view except a partial one caused by a chain link fence,

From that point one could see through the fence and well around the curve of the track more than the 3,445 feet distant. From a point 150 feet north of the rail one could see 1,680 feet along the track towards the train's approach. From a distance of 200 feet north visibility was unobstructed for 420 feet.

In the easterly direction from a point 100 feet to the north the view was unobstructed for several miles. From a point 150 feet north there is some evidence that the view on the night in question was partially obstructed by trees.

The testimony of plaintiff as to his actions and conduct immediately preceding the collision between his automobile and the train is in effect as follows: The first notice to him that he was approaching a railroad track was a crossing mark on the highway located about 385 feet north thereof. He also saw a railroad crossing road sign beside the highway at that point. He was looking ahead but saw no crossing signals. He then looked to his right and saw a shed with some lights along its side. He proceeded on a little way then turned his head and looked to the left as he knew he was approaching the railroad crossing itself. The building was still to his right at this point. He observed some obstruction to his view on his left and continued to look east longer than normal because he wanted to get beyond the obstruction in order to see down the tracks in that direction. He continued to look east until he gained an unobstructed view at which point he was about 100 feet from the tracks. "Q. How long do you think that took you to make a good look? A. A second maybe or less. Q. Did you turn your head again and look any other direction? A. Well, I turned back to the front, looked to the front. Q. All right. Now, between the time you turned your head from the right where the shed was to look to the left and kept looking until you looked in front of you did you hear the sound of any whistle, air horn, bell or gong? A. No, I did not. Q. Did you see any headlight of any train travelling in either direction? A. No, I did not. Q. East or westbound. Did you see any lights, either wigwag or flashing lights or any other lights, at the crossing? A. No, I did not. Q. Up to that time when you looked ahead again were you aware that there were signals at the crossing? A. Well, no. I wasn't really aware that there was any. Q. I mean could you actually see them? A. I don't remember seeing them. Q. So you can't tell us whether there were wigwags or flashing lights installed at the crossing at the time of the accident. A. No, I cannot.

Q. Now, when you looked straight ahead again, how far would you say you were from the crossing? A. Oh, I would say probably three car lengths from the, where the point of impact— Q. And by that time did you have a view to your right also? A. Not when I looked directly forward, no. Q. When you looked—did you ever look to the right again? A. I did; right after I looked to the front I turned my head and looked up to my right. Q. What did you see? A. I saw the headlight of a train. Q. All right. Did you see a revolving headlight, either white revolving or a red revolving headlight? A. No. I did not. Q. What type of headlight did you see? A. It was just a, I guess what you call a plain—— Q. Fixed beam? A. Fixed beam headlight. Q. How far were you from the rails where the accident happened when you saw the headlight of this train? A. Oh, I'd say probably two or three car lengths. MR. AMES: Counsel, will you stipulate the average car length is about 17 feet? MR. STANBURY: Yes. Q. By MR. AMES: So be 35, 51 feet or something like that. A. Yes, sir. Q. Around 50 feet. Could you give us any idea how far the headlight of the train was from the point of impact when you first saw it? A. Well, it would just be a guess, but I would say probably about a hundred feet. Q. I see. Could you judge its speed? A. No. I could not. Q. By this time do you remember—withdraw that. Do you remember there being a rise. A. Yes. There was a slight rise in the road which led up to the tracks themselves. Q. I see. As you got to this rise, had you reduced your speed? A. Well, I had let my foot, raised my foot up off the accelerator and, naturally, that would reduce the speed to a certain extent; probably to 35 or 40. Q. Did you put on the brake? A. I hadn't put on the brake up until the point that I saw the train.''

From the foregoing it is clear that plaintiff looked to the left until he obtained a clear view to the east at a point some 100 feet from the rails. He then looked front and did not look to the right again until he was about 50 feet from the point of impact. In the meantime, he had decelerated from a speed of 45 to 50 miles to 35 to 40 miles per hour without ever applying his brakes until he saw the train. He, at no time, heard any bell or whistle although both were sounding. He never saw the train's headlight until he observed the train itself some 100 feet from the impact point. Had he looked to his right at the point 100 feet from the rails when he discontinued his observation to the left, he would have had practically an unobstructed view for some 3,000 feet. Instead he

elected to look forward for another 50 feet, proceeding at 35 to 40 miles per hour, before turning his eyes to the right at which time the collision was inevitable. The acts and conduct of plaintiff as thus related demonstrate that he failed to exercise that degree of reasonable care in looking and listening for any approaching trains that the facts and circumstances herein shown required of him. His failure to do so constituted contributory negligence and fully supports the finding of the court that he was contributorily negligent as a matter of fact.

The judgment is affirmed.

Herndon, Acting P. J., and Roth, J., concurred.

A petition for a rehearing was denied March 16, 1964, and appellant's petition for a hearing by the Supreme Court was denied April 29, 1964. Peters, J., was of the opinion that the petition should be granted.