Filed 6/4/19; pub. order 6/28/19 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SWEETWATER UNION HIGH SCHOOL DISTRICT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JULIAN UNION ELEMENTARY SCHOOL DISTRICT et. al. <br><br> Defendants and Appellants. | D073878 <br><br><br> (Super. Ct. No. 37-2015-00021033-CU-MC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Ronald L. Johnson, Judge.  Affirmed.

Blank Rome, Gregory M. Bordo, Christopher J. Petersen and Dustin Z. Moaven for Defendants and Appellants.

Dannis Woliver Kelley, Sarah L.W. Sutherland and Keith A. Yeomans for Plaintiff and Respondent.

Julian Union Elementary School District (Julian) and Diego Plus Education Corporation (Diego Plus) doing business as Diego Valley Public Charter (Diego Valley)

(together appellants) appeal an attorney fee award to Sweetwater Union High School District (Sweetwater) made under Code of Civil Procedure[1] section 1021.5. Appellants assert that Sweetwater did not qualify as a successful party under section 1021.5 because Sweetwater: (1) failed to achieve its primary litigation goal, (2) the relief it achieved was illusory, and (3) its suit was not a catalyst in motivating either Julian or Diego Valley to take or not take any particular action. Even assuming the trial court did not err in awarding Sweetwater successful party status, appellants claim that Sweetwater was not entitled to a fee award because Sweetwater failed to carry its burden of establishing all requirements for a fee award under section 1021.5. Assuming we reject its other arguments, appellants claim that the trial court abused its discretion by rubberstamping the amount of attorney fees that Sweetwater requested. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Sweetwater and Julian are public school districts in San Diego County, California. Sweetwater provides educational services to over 40,000 students in several cities in San Diego County, including Chula Vista and National City. Julian serves just over 300 students from preschool to eighth grade; it does not serve high school students.

Diego Plus operates the charter schools Diego Valley and Diego Springs Academy (Diego Springs). Diego Plus pays fees to Julian for its Diego Valley charter school program. Diego Springs operates resource centers at 2 North Euclid Avenue in National

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

City (the National City facility) and at 310 Broadway in Chula Vista (the Chula Vista facility). Both facilities are located within Sweetwater's school district boundaries.

In March 2015 Sweetwater sent letters to Julian and Diego Valley requesting that they stop operating within Sweetwater's geographic boundaries. In June 2015, after neither Julian nor Diego Valley responded, Sweetwater filed this action to enforce the Charter Schools Act (CSA) (Ed. Code, § 47600 et seq.). In its petition for a writ of mandate, Sweetwater alleged that Julian approved a charter petition for Diego Valley and that Diego Valley has been operating charter schools outside Julian's geographic boundaries.

On October 17, 2016, the third district filed its opinion in *Anderson Union High School Dist. v. Shasta Secondary Home School* (2016) 4 Cal.App.5th 262 (*Anderson*), holding that the geographic limitations in the CSA apply to all charter schools, whether classroom-based or nonclassroom-based, such as resource centers. (*Id.* at pp. 275-277.) After *Anderson*, Sweetwater attempted to resolve the case through a stipulated judgment, but appellants "rejected any efforts to settle" the litigation. Julian subsequently submitted an application to the State Board of Education (SBE) requesting a waiver of the CSA's geographic restrictions pursuant to Education Code section 33050. The waiver application admitted that Julian had four resource centers that may be affected by the *Anderson* opinion.

In March 2017 several Diego Valley students moved to intervene, alleging that Sweetwater's lawsuit would deprive them of their constitutional right of access to a

quality public education.[2] In April 2017 Sweetwater filed its motion for judgment, asserting that Julian was allowing Diego Plus to open facilities outside Julian's school district. Sweetwater argued that *Anderson*, *supra*, 4 Cal.App.5th 262, unequivocally prohibited Diego Plus's operations and that Julian and Diego Valley sought to justify their out-of-district operations under other exceptions to the CSA's location requirements.

In May 2017 Julian and Diego Plus filed opposition. Among other things, Diego Plus argued that Diego Valley does not operate and has never operated within Sweetwater's geographic boundaries. Among other things, Julian argued that Sweetwater sued the wrong parties because the National City and Chula Vista facilities are operated by Diego Springs. In May 2017 the SBE granted Julian's waiver application. The parties submitted supplemental briefs addressing the impact, if any, of SBE's waiver on Sweetwater's claims.

The trial court issued a tentative ruling, which it later affirmed after hearing the parties' arguments. The court declined to issue a writ of mandate directing that Julian revoke Diego Valley's charter, essentially concluding this form of relief would unreasonably disrupt students. The court declared that Diego Valley's operation at the National City and Chula Vista facilities "would be in violation of the Education Code" and enjoined Diego Valley from operating both facilities.

Thereafter, Sweetwater moved for an attorney fees award under section 1021.5, arguing, among other things, that its action acted as a catalyst for appellants' pursuit of

---

[2] The trial court denied the claims of the intervening students. The students have not appealed, and we will not address their claims.

the SBE waiver. The court granted the motion, finding that the requirements of section 1021.5 were satisfied, and awarded Sweetwater $166,027.05 in attorney fees. Appellants timely appealed from the fee award, but did not appeal the order on the merits of Sweetwater's claims.

## DISCUSSION

### I. *SECTION 1021.5*

"The Legislature adopted section 1021.5 as a codification of the private attorney general doctrine of attorney fees developed in prior judicial decisions." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1288.) "[T]he fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." (*Id.* at p. 1289.) "Due to the burdens imposed on public agencies, adequate government enforcement of the laws is not always possible, making private action imperative." (*Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 545 (*Hewlett*).)

"A court may award attorney fees under section 1021.5 only if the statute's requirements are satisfied. Thus, a court may award fees only to 'a successful party' and only if the action has 'resulted in the enforcement of an important right affecting the public interest . . . .' [Citation.] Three additional conditions must also exist: '(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not

5

in the interest of justice be paid out of the recovery, if any.' "[3]  (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 250-251 (*Vasquez*), quoting § 1021.5.)

The determination whether a party has met the requirement for an award of fees and the reasonable amount of such an award are matters best decided by the trial court in the first instance.  (*Hewlett*, *supra*, 54 Cal.App.4th at p. 544.)  That court "must realistically assess the litigation and determine from a practical perspective whether the statutory criteria have been met."  (*Ibid.*)  We will uphold the trial court's decision to award attorney fees under section 1021.5 unless the trial court abused its discretion.  (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578 (*Graham*).)  In making this determination we review the entire record, noting the trial court's stated reasons for awarding fees and whether it applied the proper standards of law in reaching its decision.  (*Hewlett*, at p. 544.)  Where, as here, litigation ends at the trial court level, we owe "the trial court a full measure of deference in deciding whether the trial court abused its discretion."  (*Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 8.)  Thus, we will reverse the award "only if it is clearly wrong or has no reasonable basis."  (*San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 754 (*San Bernardino Valley*).)

We review any factual findings by the trial court in connection with the ruling under the substantial evidence standard.  (*Ellis v. Toshiba America Information Systems,*

---

[3]     Subdivision (c) of section 1021.5, which requires that "such fees should not in the interest of justice be paid out of the recovery, if any" is inapplicable here since Sweetwater's action did not produce any monetary recovery.

6

*Inc.* (2013) 218 Cal.App.4th 853, 881.) Additionally, we apply a de novo review " ' "where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213 (*Whitley*).)

## II. *ANALYSIS*

As a preliminary matter, we note that a trial court is "not required to issue a statement of decision with regard to [a] fee award." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140.) Here, the trial court expressly found that Sweetwater met all elements for an award of fees under section 1021.5. We will not disturb the determination absent a showing it is clearly wrong or there is no reasonable basis for the award. (*San Bernardino Valley*, *supra*, 155 Cal.App.3d at p. 754.) "The pertinent question is whether the grounds given by the court for its [grant] of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of this case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298.)

We reject appellants' assertion that the de novo standard of review applies to our review. Such review is only warranted where the determination of whether the criteria for an award of attorney fees has been satisfied amounts to statutory construction and a question of law. (*Whitley*, *supra*, 50 Cal.4th at p. 1213.) This is not such a case because the trial court made no findings and provided no grounds for its conclusion to award fees. We must presume that the trial court made all factual findings to support its order and

7

that the trial court was aware of and followed the applicable law. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

   A. *Sweetwater Qualified As a Successful Party*

   Appellants assert that Sweetwater did not qualify as a successful party under section 1021.5 as a matter of law because: (1) it failed to achieve its primary goal, (2) the relief granted by the trial court was illusory and inconsequential, and (3) its suit was not a catalyst in motivating the actions of either Julian or Diego Valley. As we shall explain, we reject this argument because Sweetwater obtained a judgment in its favor and qualified as a successful party for this reason. Appellants' reliance on the catalyst theory of recovery and cases pertaining to this theory are inapposite.

   Under section 1021.5, "[a] 'successful party' means a 'prevailing' party." (*Bowman v. City of Berkeley* (2005) 131 Cal.App.4th 173, 178 (*Bowman*).) "It is settled, however, that a party need not prevail on every claim presented in an action in order to be considered a successful party within the meaning of the section." (*Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 846 (*Wallace*).) A party who " ' " 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit' " ' " (*Bowman*, at p. 178, italics omitted) may be

8

considered a prevailing party "for attorney's fees purposes." (*Ibid.*) "The significance of the . . . issue was a matter for the trial court's judgment." (*Ibid.*)

Here, appellants argued to the trial court that Sweetwater failed to achieve its primary litigation goal and that the minimal relief it obtained was different than requested, had no impact on Diego Plus, and was not the catalyst for Diego Plus taking any action. The trial court necessarily rejected these arguments.

The prayer in Sweetwater's petition requested that a peremptory writ of mandate issue to Julian to: (1) set aside Diego Valley's charter, (2) discharge its oversight duties over Diego Valley, (3) refrain from approving charter schools operating outside Julian's geographic boundaries, and (4) revoke Diego Valley's charter and prohibit Diego Valley from operating charter schools in violation of the charter and the law. It requested that a peremptory writ of mandate issue to Diego Valley to: (1) submit a legally sufficient charter petition complying with the requirements of the CSA, including submission to the school district(s) in which it proposes to operate; and (2) with respect to location of its charter school(s), strictly comply with the location and notice provisions of the CSA by following the requisite process outlined in Education Code sections 47605 and 47605.1.

Sweetwater requested declaratory relief stating that the operation of a charter school by Diego Valley outside of Julian's geographic boundaries violated the CSA and that Julian thus had a ministerial duty to revoke Diego Valley's charter. Sweetwater also requested injunctive relief to preclude the opening and operation of a proposed resource center in National City and precluding Julian and Diego Valley from taking further action in violation of the law.

9

Before trial, the court issued a tentative ruling. After trial, the court adopted its tentative ruling. The trial court's tentative ruling concluded that Diego Valley and Diego Springs were not separate legal entities, but fictitious business names of Diego Plus. It concluded that Diego Plus operated the National City and Chula Vista facilities through Diego Valley. It found that Diego Plus was not granted a waiver to operate either facility, "[t]herefore the operation through Diego Valley at these two facilities *would be* in violation of the Education Code and [*Anderson*, *supra*,] 4 Cal.App.5th 262." (Italics added.) The court, however, denied Sweetwater's petition for writ of mandate finding, in part, that ordering compliance with the law to be "superfluous." The court issued a declaration that Diego Valley's operation at the National City and Chula Vista facilities "*would be* in violation the Education Code" (italics added) and granted injunctive relief prohibiting Diego Valley from operating both facilities.

Appellants contend that Sweetwater is not a successful party for purposes of an attorney fee award under section 1021.5 because Sweetwater did not prevail on any of its claims as to Julian. Appellants are correct that Sweetwater did not prevail on any of its claims as to Julian, an argument Julian made to the trial court. The trial court likely rejected this argument, however, because it ignores settled law that a party need not prevail on every claim to be considered a successful party under section 1021.5. (*Wallace*, *supra*, 170 Cal.App.3d at p. 846; *Bowman*, *supra*, 131 Cal.App.4th at p. 177.) Rather, partial success is a factor to be considered by the trial court in determining the amount of fees awarded. (*Wallace*, at pp. 846-847.) Moreover, CCP section 1021.5 allows attorney fees to be recovered against "opposing parties," meaning "a party whose

10

position in the litigation was adverse to that of the prevailing party." (*Nestande v. Watson* (2003) 111 Cal.App.4th 232, 240-241.) A finding of fault or misconduct by the opposing party is not required. (*Mejia v City of Los Angeles* (2007) 156 Cal.App.4th 151, 161 (*Mejia*).) Julian qualified as an opposing party liable for an attorney fee award under section 1021.5. Although Julian could have asked the trial court to apportion the fee award, it did not make such a request and the trial court found appellants jointly and severally liable. (See, e.g., *Mejia*, at p. 156 [fees assessed 50 percent against city, 50 percent against real party in interest].)

Appellants next assert that Sweetwater does not qualify as a successful party because the declaratory and injunctive relief awarded by the trial court was illusory and inconsequential. Appellants' argument is based on the wording of the trial court's tentative ruling, which stated:

> "As to the second cause of action, the operation of Diego Valley at the National City Facility and the Chula Vista Facility *would be* in violation of the Education Code, therefore Sweetwater is entitled to declaratory relief in that regard. Sweetwater is also entitled to injunctive relief prohibiting Diego Plus from operating as Diego Valley at the National City Facility and Chula Vista Facility. Sweetwater's request for declaratory and injunctive relief is therefore granted." (Italics added.)

Appellants contend that the trial court phrased its order in the subjunctive because Sweetwater failed to establish that Diego Valley ever operated at either the National City facility or the Chula Vista facility and that the court fashioned unnecessary relief. The record shows that one of the primary factual disputes before the trial court was whether appellants were operating within Sweetwater's geographical boundaries. Sweetwater

11

argued to the trial court that Diego Plus, through Diego Valley and Diego Springs, operated both the National City and the Chula Vista facilities, whereas appellants argued that Diego Valley does not operate and has never operated within Sweetwater's geographic boundaries. Julian specifically argued to the trial court that declaratory relief must be denied because Diego Valley was not operating within Sweetwater's geographic boundaries; thus, there was no actual controversy between the parties and a declaratory judgment would merely offer advice on hypothetical facts.

To qualify for declaratory relief under section 1060 a plaintiff must show its action is a proper subject of declaratory relief and that an actual controversy exists involving justiciable questions relating to the rights or obligations of a party. (*Brownfield v. Daniel Freeman Marina Hospital* (1989) 208 Cal.App.3d 405, 410 (*Brownfield*).) "The 'actual controversy' requirement concerns the existence of *present* controversy relating to the legal rights and duties of the respective parties pursuant to contract [§ 1060], statute or order." (*Ibid.*)

As Julian correctly noted in its arguments to the trial court, declaratory relief is not appropriate where a controversy is "conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court." (*Brownfield*, *supra*, 208 Cal.App.3d at p. 410.) Here, the trial court necessarily rejected appellants' factual arguments that Diego Plus was not operating within Sweetwater's geographic boundaries finding that (1) Diego Plus operated the two facilities through Diego Valley, and (2) Sweetwater was "entitled to" both declaratory and injunctive relief and "grant[ing]" of such relief. The trial court's statement that operation of the two facilities "would be in

12

violation of the Education Code" (rather than stating "is" a violation) created an ambiguity. The parties, however, did not object to the court's ruling or request clarification or additions. Appellants also did not appeal from the court's ruling on Sweetwater's petition and the propriety of that ruling is not before us.[4]

In opposing Sweetwater's request for an attorney fee award, Diego Plus argued that the phrasing of the trial court's tentative ruling shows it rejected Sweetwater's argument that Diego Plus was operating within Sweetwater's geographic boundaries. The trial court necessarily rejected this argument by impliedly finding that Sweetwater qualified as a successful party under section 1021.5 and awarding it fees. The court's

[4]     Upon a party's timely and proper request, a trial court must issue a statement of decision upon "the trial of a question of fact by the court." (§ 632.) The statement must explain "the factual and legal basis for [the court's] decision as to each of the principal controverted issues at trial . . . ." (*Ibid.*) In trials completed in one calendar day, a request for statement of decision must be made before the matter is submitted for decision. (*Ibid.*) "The statement of decision provides the trial court's reasoning on disputed issues and is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law." (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718.) A request for a statement of decision allows the trial court to review its memorandum of intended decision and "to make . . . corrections, additions, or deletions it deems necessary or appropriate." (*Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129.)

        Appellants do not claim that they timely requested a statement of decision and we have not found such a request. Additionally, although a trial court may state that its tentative decision is the court's proposed statement of decision or direct that the tentative decision shall be the statement of decision, the trial court did not choose either of these options. (Cal. Rules of Court, rule 3.1590(c)(1) & (4).) The trial court's tentative ruling is no substitute for a statement of decision. While we may examine a trial court's tentative or memorandum decision to help interpret its findings and conclusions, the function of a memorandum decision on appellate review is very limited and a memorandum opinion "will not be used in determining whether or not the . . . findings of the court are supported by the evidence." (*Balding v. Atchison, T. & S.F. Ry. Co.* (1964) 225 Cal.App.2d 254, 258.)

tentative ruling on Sweetwater's petition supports this implied finding because it shows that the trial court found Sweetwater "entitled to" both declaratory and injunctive relief.

The declaratory and injunctive relief granted by the trial court changed the legal relationship between the parties. Traditional (noncatalyst) success requires the claimant to prevail by obtaining " 'a judicially recognized change in the legal relationship between the parties.' " (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608 (*Tipton*).) The trial court could have reasonably concluded that the relief it granted qualified Sweetwater as the successful party in the litigation. In this situation, the trial court did not need to rely on a "catalyst theory" which permits a trial court to award fees under section 1021.5 without a judicial resolution of the litigation if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation. (*Graham*, *supra*, 34 Cal.4th at p. 560.)

Because the record supports a conclusion that the trial court found Sweetwater to be a successful party in the traditional (noncatalyst) sense, there is no need for us to address appellants' argument, and cited authorities, that Sweetwater did not accomplish its primary litigation aim because this inquiry is relevant only in catalyst cases. (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1346 ["[T]rial court's conclusion that [party] could not be considered a successful party because he did not accomplish his 'primary' litigation aim 'is based on language in "catalyst" cases, where the issue is whether a party who has not obtained *any* judicial relief is nevertheless entitled to fees."].)

14

In any event, even assuming the trial court found Sweetwater to be a successful party under a catalyst theory, the record supports Sweetwater's entitlement to successful party status under this theory. Under the catalyst theory, plaintiffs may be considered to be the prevailing party when they achieve their litigation objectives, even though they succeed "by means of [the] defendant's 'voluntary' change in response to the litigation," rather than by means of a final judgment." (*Graham*, *supra*, 34 Cal.4th at p. 572.) To constitute a successful party under the catalyst theory, "a plaintiff must establish that (1) the lawsuit was a catalyst motivating the [defendant] to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense . . . ; and (3) that the [plaintiff] reasonably attempted to settle the litigation prior to filing the lawsuit." (*Tipton*, *supra*, 34 Cal.4th at p. 608.)

Sweetwater's petition makes clear that its central grievance was appellants' operation of charter schools within its geographic boundaries.[5] The trial court could have reasonably concluded that Sweetwater's primary goal in this action was to compel appellants' compliance with the geographic requirements in the CSA. "To satisfy the causation prong of the catalyst theory, the plaintiff need not show the 'litigation [was] *the only cause* of defendant's acquiescence. Rather, [the] litigation need only be a substantial factor contributing to defendant's action." (*Cates v. Chiang* (2013) 213 Cal.App.4th 791, 807.) The trial court could have reasonably concluded that this action was the catalyst in

---

[5]    Appellants do not dispute that Sweetwater tried to settle this litigation.

15

motivating appellants' pursuit of waivers from the SBE and that these waivers mooted Sweetwater's mandamus claims. Accordingly, even under a catalyst theory of recovery, the trial court would not have erred in finding Sweetwater to be the successful party.[6]

For the first time in its reply brief, appellants argue that Sweetwater is not a successful party because it obtained no relief as to Diego Valley and Diego Springs. Generally, arguments raised for the first time in a reply brief are forfeited. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477 [" 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.' "].) Nonetheless, we exercise our discretion to address this argument because it is easily resolved. As appellants note, Diego Valley and Diego Springs are separate charter schools and are not defendants to this action. However, Diego Plus is a defendant and the trial court found that Diego Valley and Diego Springs were not separate legal entities, but fictitious business names of Diego Plus. "Use of a fictitious business name[, however,] does not create a separate legal entity . . . ' " . . . distinct from the person operating the business." ' " (*Pinkerton's Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348, italics omitted.) If Diego Valley and Diego Springs are merely fictitious business names under which Diego Plus operated, then Diego Valley and Diego Springs could not even be named as defendants—they are not legal entities. Thus, by granting

---

6       Sweetwater's request for judicial notice of documents showing the closure of Diego Springs and Diego Valley is denied. These closures occurred after the trial court made its fee award. We generally do not take judicial notice of evidence not presented to the trial court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

16

declaratory and injunctive relief against Diego Plus, the court granted relief as against the fictitious business names under which Diego Plus operated.

B. *Sweetwater Satisfied the Remaining Section 1021.5 Criteria*

Even if the trial court did not err in determining that Sweetwater was a successful party, appellants claim that Sweetwater failed to establish that its action (1) sought to enforce an important right affecting the public interest, (2) conferred a significant benefit on the general public or a large class of persons, and (3) was not necessary or burdensome enough to warrant an award of attorney fees. (*Vasquez*, *supra*, 45 Cal.4th at pp. 250-251.) We address the challenged criterion in turn.

1. *Enforcement of important right affecting public interest*

Appellants contend that this action did not enforce the right of children to receive a public education, any constitutional rights, or any other important public right. They again assert that "the trial did *not* hold that either Diego Valley or Julian violated any law, but rather that only Diego Valley had the *potential* to do so." Appellants reason that since they "neither acted nor failed to act in such a way as to violate or compromise an important right as to require enforcement through litigation, Sweetwater cannot be found to have 'enforced' any right by way of its litigation."

Sweetwater notes that the Legislature added the geographic restrictions to the CSA to improve charter school oversight which is critical to the constitutionality of charter schools and the CSA. By operating illegally outside Julian's district boundaries, Sweetwater contends that "Diego Plus circumvents all local input and any meaningful oversight by a financially interested authorizer." Sweetwater argues that "[o]ut of district

17

charter school operation leaves public charter schools unaccountable to the communities they serve who: (1) are often unable to attend the board meetings held by distant and remote school districts; and (2) cannot vote or run as a candidate in the election of board members responsible for controlling the distant charter schools. Also, the diversion of funds to illegally authorized charter schools is a drain on limited public education funds." Sweetwater maintains that halting appellants' illegal charter school operations furthers these important public interests.

In determining whether the right vindicated in a particular case is sufficiently important to justify a fee award, courts must "exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved" (*Woodland Hills Residents Assn, Inc. v. City Council* (1979) 23 Cal.3d 917, 935 (*Woodland Hills*)) and "should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." (*Id*. at p. 936.) Courts have broadly interpreted the important right concept and "frequently reject attempts to characterize rights in their most narrow or personal light." (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2019) § 3.40, p. 3-14.)

In *Woodland Hills*, the plaintiffs prevailed on a procedural rather than substantive basis and sought attorney fees under section 1021.5. (*Woodland Hills*, *supra*, 23 Cal.3d at p. 937.) The Supreme Court rejected defendant's contention that complying with a technical requirement "does not rise to the level of an 'important right' for purposes of section 1021.5." (*Ibid.*) Our high court noted that "the fact that a plaintiff is able to win his case on a 'preliminary' issue, thereby obviating the adjudication of a theoretically

18

more 'important' right, should not necessarily foreclose the plaintiff from obtaining attorney fees under a statutory provision." (*Id.* at p. 938.) The court explained that "it would be both unfair and contrary to the legislative purpose of section 1021.5 to deprive a plaintiff of attorney fees simply because the court decides the case in plaintiff's favor on a 'simpler' or less 'important' theory." (*Ibid.*) Rather, when a plaintiff prevails on a preliminary issue, a "trial court, utilizing its traditional equitable discretion (now codified in § 1021.5), must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award." (*Ibid.*) This rationale applies here.

California's Constitution guarantees a free public education, established through "a system of common schools." (Cal. Const., art. IX, § 5.) Charter schools are part of this public system of common schools (Ed. Code, §§ 47601, 47615, subd. (a)(1)), but are "*strictly* creatures of statute. From how charter schools come into being, to who attends and who can teach, to how they are governed and structured, to funding, accountability and evaluation—the Legislature has plotted all aspects of their existence." (*Wilson v. State Bd. of Education* (1999) 75 Cal.App.4th 1125, 1135.) "Once approved, charter schools are operated independently, but are subject to public oversight. [Citations.] Such public 'control and oversight . . . legitimize[s] charter schools' [citation] and arguably is constitutionally necessary." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 206 (*Today's Fresh*).) Charter schools have a "complicated relationship with other public schools. 'Obviously charter schools are not in opposition to the public school system. On the contrary, they are a part of that system.'

19

[Citation.]  Nevertheless, 'charter schools compete with traditional public schools for students, and they receive funding based on the number of students they recruit and retain at the expense of the traditional system.' "  (*Id.* at pp. 206-207.)

Legislative history materials show that the issue of where charter schools would operate has been an issue since the inception of the CSA.  The legislative counsel noted that despite "the lack of any explicit authorization for a school district governing board to approve the charter of a school that would operate outside the district, . . . this is a common practice among charter schools."  (Sen. Com. on Education., Analysis of Assem. Bill No. 1994 (2001-2002 Reg. Sess.) June 25, 2001.)  The lack of geographic restrictions on charter school operations resulted in school districts approving charter schools for a "bounty."  (Sen. Com. on Education, Staff Rep. on Assem. Bill No. 1994 (2001-2002 Reg. Sess.)  In one case, "the charter was charged a percentage of their revenue limit, on the average of 15%, in exchange for the [charter] authorization."  (*Ibid.*)

In 2002 the Legislature amended the CSA to add "stringent geographical restrictions for the operation of charter schools."  (*California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1307 (*California School*).)  "The impetus behind those amendments, which were sponsored by the State Superintendent of Public Instruction, was explained in an analysis prepared for the Senate Committee on Education.  'The [State Board] has in practice allowed single charters to be used to authorize the operation of multiple school sites, which are called "satellites" of the charter.  Satellites have often operated at considerable distance from the "home" charter. Early this year the Gateway Charter School, chartered by the Fresno Unified School

20

District, was the subject of several newspaper articles and an ongoing law enforcement investigation, concerning allegations that satellites of the Gateway School were operating in violation of several laws. Gateway's charter was revoked by the district governing board who cited the difficulties of keeping track of remote (satellite) operations as a reason why various anomalies were not discovered sooner.' [Citation.] As stated in a comment to another analysis, '[b]y placing a geographic restriction on a charter school's operations, this bill would help clarify a district's sovereignty over public education provided within its boundaries and [would] enhance oversight of charter schools.' " (*Id.* at pp. 1307-1308.)

Charter schools must now be located within the boundaries of the school districts where they are chartered, with limited exceptions. (*California School*, *supra*, 186 Cal.App.4th at p. 1308; see Ed. Code, §§ 47605, subd. (a)(1), 47605.1.) Specifically, Education Code section 47605, subdivision (a)(1) provides: "A petition for the establishment of a charter school shall identify a single charter school that will operate within the geographic boundaries of that school district. A charter school may propose to operate at multiple sites within the school district if each location is identified in the charter school petition." The *Anderson* court interpreted this language as applying to "*all* charter schools whether classroom-based or nonclassroom-based." (*Anderson*, *supra*, 4 Cal.App.5th at p. 277.) Additionally, the in-district geographic boundary limitation "appl[ies] to the *operation* of the charter school" including locations, such as resource centers, that provide educational support to charter school students. (*Id.* at p. 276.)

21

In awarding fees under section 1021.5 the trial court impliedly found that Sweetwater's action enforced an important right affecting the public interest. We cannot conclude that the trial court abused its discretion in making this finding. "The chartering of a school and the charter school's compliance with the law, the regulations, and the conditions imposed on its charter can be matters of serious concern to the public and to our public school system." (*California School*, *supra*, 186 Cal.App.4th at p. 1326.) "[P]ublic 'control and oversight . . . legitimize[s] charter schools' . . . ." (*Today's Fresh*, *supra*, 57 Cal.4th at p. 206.) "If monitoring and enforcement are, in reality, either lax or nonexistent, then the entire statutory scheme governing charter schools is called into question." (*California School*, at p. 1326.)

Here, the trial court found that Diego Plus operated within Sweetwater's geographic boundaries and ordered that this practice stop. In view of the foregoing authorities, the trial court could have reasonably found that requiring compliance with the geographic boundary requirements of the CSA enforced an important right affecting the public interest.

2. *Significant public benefit*

Appellants contend that the prospective declaratory and injunctive relief granted by the trial court provides no significant benefit to Sweetwater, Sweetwater's constituents or anyone else. They claim that Sweetwater is the only potential beneficiary of this action and that such self-serving litigation does not warrant an award of attorney fees.

An award of attorney fees to the prevailing party is justified in an action if "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general

22

public or a large class of persons." (§ 1021.5, subd. (a).) " '[T]he "significant benefit" that will justify an attorney fee award need not represent a "tangible" asset or a "concrete" gain but, in some cases, may be recognized simply from the effectuation of a fundamental constitutional or statutory policy.' [Citation.] The benefit may be conceptual or doctrinal [citation], and the California Supreme Court has recognized that 'the litigation underlying the section 1021.5 award can involve rights or benefits that are somewhat intangible.' " (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 233.) "The fact that litigation enforces existing rights does not mean that a substantial benefit to the public cannot result. Attorney fees have consistently been awarded for the enforcement of well-defined, existing obligations." (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318.) "The 'extent of the public benefit need not be great to justify an attorney fee award' " under section 1021.5. (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 894.) Nor is it required that the class of persons benefited be " 'readily ascertainable.' " (*Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 876, fn. 19.)

Here, the trial court could have reasonably concluded that Sweetwater's action advanced the public's interest in the lawful operation of charter schools and the Legislature's oversight objectives reflected in the CSA's location requirements. Even more broadly, the trial court could have found that through this action Sweetwater has helped preserve the constitutionality of charter schools within the public education

system.  The trial court could have reasonably concluded that advancement of these objectives conferred a significant benefit on the general public.

3. *Necessity and Financial Burden of Private Enforcement*

The necessity and financial burden requirement " ' "examines two issues:  whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." ' "  (*Whitley*, *supra*, 50 Cal.4th at p. 1214.)  Where, as here, the action is between two public entities (Sweetwater and Julian), the question is the necessity of "enforcement by one public entity against another public entity."  (§ 1021.5.)  Appellants argue this action was not necessary because it resulted in a ruling regarding Diego Valley's "hypothetical future actions which 'would be in violation of the [CSA].' "  Given that Sweetwater obtained no practical relief, appellants reason that the trial court clearly erred in finding this action necessary.  Appellants are mistaken in analyzing this element.

The necessity of private enforcement element of the section 1021.5 analysis requires courts to consider only one fact—the availability of public enforcement. (*Whitley*, *supra*, 50 Cal.4th at p. 1217.)  Here, because Sweetwater and Julian were public entities, the trial court could have reasonably concluded that this action was necessary to enforce compliance with the CSA.

We next consider the financial burdens and incentives involved in bringing the lawsuit.  (*Whitley*, *supra*, 50 Cal.4th at p. 1215.)  This inquiry examines "the costs of the litigation [and] any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield."  (*Ibid.*)  This cost-benefit analysis seeks to determine

whether the financial burden of the lawsuit was out of proportion to the plaintiffs' individual stake in the matter.  (*Ibid.*)  Our high court noted that "courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield." (*Ibid.*)

"[T]he absence of a monetary award, or of precise amounts attached to financial incentives, does not prevent a court from determining whether the plaintiff's financial burden in pursuing the lawsuit is ' " 'out of proportion to his individual stake in the matter.' " ' "  (*Summit Media, LLC v. City of Los Angeles* (2015) 240 Cal.App.4th 171, 193.)  No abuse in awarding fees can be found where the facts show "that the plaintiff's 'future money advantage . . . is speculative' [citation], or that the plaintiff's' ' "pecuniary benefit will be indirect and uncertain." ' "  (*Ibid.*)

Appellants claim that the trial court's order accomplished one thing, the elimination of Sweetwater's competition for average daily attendance per-student funding (ADA funding).  Because of this, appellants argue that Sweetwater failed to meet its burden of establishing that the cost of litigation transcended its expected personal financial stake in the increased ADA funding it expected to receive at the outset of this litigation.  Appellants note that for the academic year of 2017-2018, Sweetwater estimated that it would receive over $9,500 per student per year.  Accordingly, Sweetwater would only have to enroll or re-enroll 20 students for just one academic year to equal the amount of its fees in this action.

Sweetwater asserts that appellants' argument "grossly mischaracterize[s] school district accounting by ignoring offsetting educational costs and relying on assumptions about hypothetical student transfers unsupported by any part of the appellate record." Sweetwater contends that a more accurate review of school district accounting compares total revenue and total expenditures. We agree with Sweetwater.

Sweetwater concedes that ADA funding is directly tied to student enrollment, which correlates to revenue. It points out, however, that while its proposed budget for the 2017-2018 school year reflects $453,861,354 in total revenue, total expenditures amount to $453,166,553, for a net revenue of $694,801. Sweetwater presented evidence that it serves "over 40,000 students." Accepting appellants' student worth theory, Sweetwater points out that this amounts to approximately $17 in net revenue per student.

In contrast, Diego Valley enrolled 686 students throughout San Diego county. Even assuming all these students were eligible to enroll in Sweetwater schools, and that they did enroll, this amounts to a trivial financial gain for Sweetwater. The record supports the trial court's implied conclusion that Sweetwater's personal financial stake in this litigation was insufficient to warrant its decision to incur significant attorney fees and costs in the prosecution of this action.

Finally, appellants contend that Sweetwater is disqualified from receiving a section 1021.5 fee award because its petition contained a prayer for damages. This argument is forfeited because it was not raised below, in appellants' opening briefing, nor is it supported with a citation to authority. (*In re Marriage of Khera & Sameer*, *supra*, 206 Cal.App.4th at p. 1477; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107,

26

1114 [issue raised without citation to authority requires no discussion]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 ["arguments not asserted below are waived and will not be considered for the first time on appeal"].)

In any event, we reject this argument on the merits. Our independent research has uncovered no support for appellants' contention. Additionally, we note that Sweetwater's prayer contained a boilerplate request "[f]or such damages and other and further relief as the Court deems just and proper." Sweetwater, however, did not request damages in its briefing to the trial court, nor did it request damages in its argument at trial. Accordingly, we are not convinced that the trial court abused its discretion in impliedly finding that the financial burden of private enforcement warranted subsidizing Sweetwater's attorneys.

In summary, we conclude that appellants have not shown that the trial court committed factual or legal error, or otherwise abused its discretion, in determining that the statutory criteria had been satisfied. Accordingly, we conclude that Sweetwater was entitled to an award of attorney fees and proceed to the parties' arguments about the amount of the fees awarded.

C. *No Abuse of Discretion in Awarding Fees*

Sweetwater sought $163,728.50 in attorney fees. In support of its request, Sweetwater filed declarations prepared by three attorneys itemizing the hourly rate and work performed on a categorical basis. The trial court awarded Sweetwater $163,728.05 in attorney fees, jointly and severally against Julian and Diego Plus.

Determination of the amount of an attorney fees award under section 1021.5 begins with the calculation of a lodestar figure. (*Graham*, *supra*, 34 Cal.4th at p. 579.)

27

The lodestar figure equals the hours expended by the attorney multiplied by that attorney's reasonable hourly rate. (*Ibid.*) "It is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method. . . . Declarations of counsel setting forth the reasonable hourly rate, the number of hours worked and the tasks performed are sufficient." (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1324.) The party seeking attorney fees has "the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.' " (*Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816.)

"With respect to the amount of fees awarded, there is no question our review must be highly deferential to the views of the trial court. [Citation.] As our high court has repeatedly stated, ' " '[t]he "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion.' " ' " (*Children's Hospital & Medical Center v. Bonta'* (2002) 97 Cal.App.4th 740, 777.)

"A trial court may not rubberstamp a request for attorney fees, but must determine the number of hours *reasonably* expended." (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 271.) Diego Plus cited this authority to the trial court in its written opposition. "In the absence of evidence to the contrary, we presume that the trial court considered the relevant factors" (*Gorman v. Tassajara Development Corp.* (2009) 178

Cal.App.4th 44, 67), including whether Sweetwater reasonably expended the number of hours it spent on this action.

Appellants assert that even assuming Sweetwater's entitlement to a fee award, the trial court erred in the amount of fees awarded. Appellants note that the court awarded Sweetwater the full amount of fees requested and contend that the court merely "rubberstamped" Sweetwater's fee request. As examples of the trial court's failure to analyze the time spent by Sweetwater's counsel, appellants observe that the trial court awarded Sweetwater over 80 hours, or approximately $20,000 worth of fees, for tasks related to the intervenor students. It also awarded 10 hours (approximately $2,000 worth of fees) for tasks related to potential criminal violations of the CSA by Diego Plus.

Additional violations of the CSA, whether criminal or not, could form a basis for Sweetwater to amend its petition. It was not unreasonable for Sweetwater to investigate this issue and request fees for this work. Nor was it unreasonable for the trial court to award these fees. The same law firm represented the intervening students and Diego Plus. The students intervened seeking essentially the opposite relief of that requested by Sweetwater in its petition. The students' claims were related to the primary litigation, and we find nothing clearly wrong in the trial court's exercise of discretion to award Sweetwater its fees related to the intervening students.

Appellants also complain that Sweetwater did not present billing timesheets to support their request, but presented declarations with general summaries of blocked-billing statements. "The law is clear, however, that an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining*

29

*Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.)  Here, the three attorneys primarily involved in the litigation provided declarations under penalty of perjury supporting the hours sought, which were broken down by hours expended in each category of services rendered.  The same trial judge presided over the entire matter, was familiar with the record and issues, and was thus well equipped to evaluate the reasonableness of the time expended by Sweetwater's counsel.  (*California Interstate Tel. Co. v. Prescott* (1964) 228 Cal.App.2d 408, 411 ["The pleadings, depositions, and other evidence of the actual work performed by defense counsel were before the court.  Upon this evidence alone the court had discretion to set the fee."].)  "The lack of detailed billing statements perhaps is relevant to the credibility of [the attorney's declaration]; however, the lack of billing statements does not automatically establish that there was insufficient evidence for the trial court to render a decision."  (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 786.)

Appellants specifically complain that the trial court had insufficient information with which to determine the reasonableness of 108.6 hours spent by attorney Keith Yeomans related to drafting the motion for judgment on the petition.  Yeomans's declaration stated that the 108.6 hours were spent as follows:  "Research, draft, and revise motion for judgment on petition for writ of mandate; analysis of oppositions to motion for judgment on petition for writ of mandate; research, draft, and revise reply to oppositions to motion for judgment on petition for writ of mandate; and communications re same."  This brief description, however, is not the only information before the trial court.  The court also had the 35-page motion, supported by six declarations, 52 exhibits

30

and legislative history.  The court also had appellants' two opposition briefs, two requests for judicial notice, evidentiary objections and numerous exhibits to which Sweetwater filed a consolidated reply.  At the beginning of trial the court acknowledged the breadth and complexity of the material, stating:

> "Ladies and gentlemen.  [¶] Thank you for the opportunity to read and read and read and read.  It is a complicated case, and I have tried very hard, as I'm sure you have, to analyze the facts and the legal arguments and the law to come up with an appropriate decision."

This record does not support appellants' assertion that the trial court had insufficient information to evaluate the work performed by Sweetwater's counsel.  Nor does it support appellants' claim that the trial court abused its discretion when it declined to reduce the amount of fees requested.

Appellants next complain about 10 blocked-billing entries by attorney Yeomans, totaling 108.1 hours, that related to the first set of written discovery.  The trial court, however, had before it the material Yeomans either drafted or reviewed, including: discovery requests, appellants' responses, and three motions to compel and opposition thereto.  Again, we discern no abuse of discretion in awarding the requested fees for this work.

Finally, appellants contend that Sweetwater's fee award should be reduced based on its partial success.  Julian specifically argued to the trial court that the "majority of the work performed by Sweetwater's legal counsel was unnecessary to achieve Sweetwater's limited success."  The trial court impliedly rejected this argument by declining to reduce the fee award.

31

We apply a two-step inquiry in analyzing whether section 1021.5 fees are appropriate where a plaintiff achieves limited success. (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 382 (*Espejo*).) The first step is to determine whether the prevailing party's successful and unsuccessful claims are related. (*Ibid.*) "If the different claims are based on different facts and legal theories, they are unrelated; if they involve a common core of facts or are based on related legal theories, they are related." (*Ibid.*) Here, all of Sweetwater's claims were legally and factually related such that an apportionment of fees was unwarranted.

Where claims are related, the second step requires the trial court to evaluate the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation and reduce the lodestar calculation if the relief is limited in comparison to the scope of the litigation as a whole. (*Espejo*, *supra*, 13 Cal.App.5th at p. 382.) "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. [Citation.] Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 435.)

Sweetwater filed this litigation to stop appellants' operation of charter schools within its geographic boundaries. The trial court impliedly found that Diego Plus was operating within Sweetwater's geographic boundaries and granted Sweetwater both declaratory and injunctive relief. The court, however, declined to issue a writ of mandate directing that Julian revoke Diego Valley's charter, finding that revoking Diego Valley's

charter was not the only reasonable exercise of discretion under the circumstances. The court cited the waivers granted by the SBE, noting that the waivers were designed to minimize disruption to students. Accordingly, the court denied the requested relief based on the detrimental impact this action would have on a large number of students. The trial court also declined to order the remaining mandamus relief requested against Julian and Diego Plus because it found that writs mandating compliance with the law to be "superfluous." Thus, although the court ultimately denied Sweetwater's petition for writ of mandate, its denial did not reflect adversely on the merits for these claims. Given these circumstances, the trial court could have concluded that Sweetwater's attorneys reasonably expended *all* its listed hours. On this record, we cannot conclude that the trial court abused its discretion in awarding Sweetwater all its requested fees.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.

33

Filed 6/28/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SWEETWATER UNION HIGH SCHOOL DISTRICT, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> JULIAN UNION ELEMENTARY SCHOOL DISTRICT et. al. <br><br>     Defendants and Appellants. | D073878 <br><br><br> (Super. Ct. No. 37-2015-00021033-CU-MC-CTL) <br><br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed June 4, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties