Filed 7/9/20

# CERTIFIED FOR PARTIAL PUBLICATION*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION THREE

| | |
|---|---|
| REDONDO BEACH WATERFRONT, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CITY OF REDONDO BEACH, <br><br> Defendant; <br><br> BUILDING A BETTER REDONDO et al., <br><br> Intervenors and Appellants. | B291111 <br><br> Los Angeles County <br> Super. Ct. No. BS168564 |

* Pursuant to California Rules of Court, rules 8.1100, 8.1105(b), and 8.1110(a), this opinion is certified for publication with the exception of part 3 of the Discussion.

REDONDO BEACH
WATERFRONT, LLC,

 Plaintiff and Respondent,

 v.

CITY OF REDONDO BEACH,

 Defendant and Respondent;

BUILDING A BETTER
REDONDO et al.,

 Intervenors and Appellants.

B294659

Los Angeles County
Super. Ct. No. BS168564

---

 APPEALS from a judgment and an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

 Angel Law, Frank P. Angel and Ellis Raskin for Intervenors and Appellants.

 Shumener, Odson & Oh, Betty M. Shumener, Henry H. Oh, and John D. Spurling for Plaintiff and Respondent.

 Mintz Levin Cohn Ferris Glovsky and Popeo, Jonathan Welner, Antony D. Nash and Samantha J. Duplantis for Defendant and Respondent City of Redondo Beach.

———

# INTRODUCTION

In this consolidated opinion, we decide two of the multiple appeals currently pending in this court related to a proposed waterfront development project (the Project) in the City of Redondo Beach (the City).

In 2010, a majority of the City's residents supported improving the waterfront area and to that end passed an initiative laying the groundwork for the City to establish a public-private partnership with a real estate developer. Respondent Redondo Beach Waterfront, LLC (the Developer) has worked with the City and has apparently expended more than $14 million since 2010 in an effort to move the Project forward. In 2016, however, residents of the City passed an initiative (Measure C) that would, if applied to the Project, substantially curtail the Project. The Developer, the City, and individual residents and resident groups (including appellants Wayne Craig, Martin F. Holmes, and Building a Better Redondo, collectively the Residents) are now engaged in Project-related litigation on several fronts.

In the published portion of this opinion, we address the primary legal issue presented in this case: whether the Developer has obtained statutory vested rights regarding the Project as against the City and if so, whether those rights vested before or after the passage of Measure C. The Developer contends it obtained vested rights under Government Code section 66498.1, which provides that a local agency's approval of a vesting tentative map confers upon a developer the right to proceed with development in substantial compliance with the ordinances, policies, and standards in effect at the time the vested tentative map is approved. It is undisputed that the City approved a

3

vesting tentative tract map for the Project prior to the passage of Measure C. The Residents argue the statute does not apply to projects located in a coastal zone (and specifically does not apply to the Project) because such projects require the approval of the California Coastal Commission (Coastal Commission) under the California Coastal Act of 1976 (Coastal Act). Their position is unsupported, however.

Although the Residents attempt to make this issue a complicated one, it is not. The City deemed the vesting tentative tract map for the Project complete before city residents passed Measure C. We therefore conclude, as the trial court did, that the Developer has obtained vested rights against the City under Government Code section 66498.1 and those rights vested before the passage of Measure C. We also reject the Residents' subsidiary argument that the vested rights issue is not ripe for decision. Accordingly, we affirm the judgment in favor of the Developer.

In the unpublished portion of this opinion, we address the Residents' appeal from an order of the court finding they were not a "prevailing party" or a "successful party" in this litigation—a ruling that precludes them from recovering litigation costs under Code of Civil Procedure section 1032 as well as attorney's fees under Code of Civil Procedure section 1021.5. Because the Residents did not fulfill their litigation objective, i.e., they did not obtain a ruling that would allow Measure C to be applied to the Project, and did not obtain any significant benefit in the litigation, we affirm the order.

4

1.      **The Waterfront Project**

The Redondo Beach King Harbor Pier area (the Waterfront) has been, by all accounts, in need of improvement for some time. In 2010, city residents voted on and approved Measure G, which authorized an additional 400,000 square feet of net new development on the Waterfront. Measure G, and specifically the zoning ordinances contained within it, sought to amend the City's local coastal program[2] to permit development in the Waterfront area. The Coastal Commission subsequently certified the amendment and the newly-passed zoning ordinances went into effect.

In order to facilitate improvements in the Waterfront, the City acquired leaseholds and other property interests in the area and sought out a private developer to assist with the Project. The City represented that the Project would include renovation of 150,000 square feet of existing building area and up to 400,000

---

[1] The court construed the Developer's motion (titled "motion for determination of bifurcated issues") as, essentially, a motion for judgment on the pleadings. Accordingly, the court based its ruling upon those allegations of the verified petition admitted in the City's first amended answer, and upon matters of which it took judicial notice. We take judicial notice of those matters as well. (Evid. Code, § 459, subd. (a).)

[2] Under the Coastal Act, a city such as Redondo Beach that includes areas of coastal zone within its boundaries must adopt a local coastal program consisting of a land use plan and zoning ordinances governing land use in coastal zones. Local coastal programs must be certified by the Coastal Commission as in compliance with the Coastal Act. (See generally 7 Miller & Starr, Cal. Real Estate (4th ed. 2019) §21:37, pp. 21-249 to 21-259.)

square feet of new development. Ultimately, the City selected CenterCal Properties, LLC, the Developer's predecessor-in-interest, as the developer for the Project.[3] In 2013, the Developer and the City entered into an exclusive negotiating agreement regarding the Project.

In June 2016, the Developer submitted an application for approval of the Project which included a vesting tentative tract map. The City notified the Developer in writing on June 23, 2016 that its application for approval of Vesting Tentative Tract Map No. 74207 (the Map) was "deemed complete."

In early August 2016, the Harbor Commission certified the Environmental Impact Report (EIR) and approved the coastal development permit, conditional use permit, Harbor Commission design review, and the Map for the Project (collectively, Waterfront Entitlements). The Harbor Commission's decision was appealed to the City Council, which approved the Waterfront Entitlements on October 18 and 19, 2016 by Resolution No. CC-1016-099.[4] The resolution explicitly noted that the City's approval of the Map "shall confer a vested right to proceed with development in substantial compliance with the ordinances, policies, and standards described in Section 66474.2 of the Government Code of the State."

In January 2017, the Project continued to move forward as the City and the Developer signed an Agreement for Lease of Property and Infrastructure Financing (the Agreement) that

---

[3] We refer to CenterCal Properties, LLC and Redondo Beach Waterfront, LLC collectively as the Developer.

[4] The City's approval of the Waterfront Entitlements was appealed to the Coastal Commission.

(among other things) identified specific parcels of land the City would lease to the Developer in connection with the Project. Although the Agreement largely preserved the City's right to approve or disapprove the Developer's plans for any reason, it acknowledged the City might have preexisting obligations to the Developer regarding vested rights that would be unaffected by the Agreement.

2.    **Measure C**

Although the City and the Developer were moving forward with the Project, residents of the City had concerns about the proposed development. On June 28, 2016, five days after the City deemed the vested tentative tract map application for the Project to be complete, the Residents and others submitted a "Notice of Intent to Circulate Petition" to the City seeking to place a local initiative—the King Harbor Coastal Access, Revitalization, and Enhancement Act, later designated Measure C—on the ballot for the next general municipal election. Opponents of the Project gathered sufficient support and signatures from City residents and Measure C was placed on the ballot for the election held on March 7, 2017.

Proponents of the initiative represented that if passed, Measure C would "stop[ ] construction of a waterfront mall adding 13,136 daily car trips and doubling development. If built, 80% of ocean views from Harbor Drive will be blocked by 45' tall structures nearly 2 football fields long. It paves 1/3 of Seaside Lagoon, eliminates our popular saltwater pool used by 81,000 people each season, and plops a massive 5-level parking structure in the harbor entrance." Measure C proponents urged City residents: "Don't sell out our waterfront and 6 acres of public parks for a pittance in annual lease income. Don't settle for a

7

boat ramp deemed inherently unsafe by every public safety official patrolling the harbor including Lifeguards and Baywatch Captains."

Opponents of Measure C argued that Waterfront repairs were urgently needed and the financially responsible course was to continue working with the Developer. Specifically, they asserted that in the existing public-private partnership, the Developer "[i]nvests in majority of infrastructure," "[c]reates a self-sustaining, environmentally safe, cohesive waterfront," "[a]ssumes responsibilities and costs of operations and maintenance," and "[e]nsures we can focus resources on other Redondo Beach concerns."

In substance, Measure C proposed amendments to two City ordinances[5] which had last been amended in 2010 by Measure G. Specifically, Measure C contained detailed provisions requiring the expansion and/or preservation of Seaside Lagoon Regional Park, preservation of harbor and ocean water views, construction of a public boat launch ramp, limitation of new off-street parking, and analysis of traffic patterns. Measure C also modified the cumulative development cap definition to include space devoted to parking facilities.

A majority of the voters casting ballots in the March 7, 2017 election voted in favor of Measure C. The City later certified the vote. As required under Public Resources Code section 30514, subdivision (a), the City submitted Measure C to the Coastal

---

[5] The ordinances at issue are Redondo Beach Municipal Code sections 10-5.1117 ("Development standards: P-PRO parks, recreations, and open space zone") and 10-5.811 ("Additional land use regulations: CC coastal commercial zones").

8

Commission, which approved the amendments to the City's local coastal program.[6]

One month after voters passed Measure C, the City notified the Developer that, in the City's view, the passage of Measure C triggered the Agreement's force majeure clause, and that the Project would be delayed.[7]

### 3. The Developer's Lawsuit

The Developer initiated the present case in early 2017 by filing a verified petition for writ of mandate (Code of Civil Procedure sections 1085 and 1086) and complaint for declaratory relief and injunctive relief against the City asserting, on various grounds, that Measure C is invalid and/or unconstitutional and, in any event, is inapplicable to the Project. Specifically, the Developer claimed Measure C is invalid because it (1) exceeds the electorate's initiative power, (2) conflicts with the City Charter, (3) is unconstitutionally vague (Cal. Const., art. I, § 7.), (4) conflicts with the City's General Plan (Gov. Code, § 65000 et seq.), (5) is procedurally defective (Elec. Code, §§ 9101, 9201), (6) conflicts with state law (Cal. Const., art. XI, § 7), and (7) deprives the Developer of substantive due process (Cal. Const., art. I, § 7). The request for declaratory relief sought

---

[6] At the Residents' request, we take judicial notice of the official minutes of the Coastal Commission's August 2018 meeting. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).) The request for judicial notice submitted May 17, 2019 is otherwise denied.

[7] In a separate case, the Developer sued the City for breach of the Agreement. We resolved the appeal in that case in a separate opinion. (*Redondo Beach Waterfront, LLC v. City of Redondo Beach* (Apr. 27, 2020, B292007) [nonpub. opn.].)

9

orders from the court on multiple issues including, as pertinent here, that Measure C could not be applied retroactively to the Project because the Developer's statutory rights under Government Code section 66498.1 had vested prior to the initiative's passage. The Residents, concerned that the City might not adequately represent proponents of Measure C, filed a motion for leave to intervene which the court granted.

The parties and the court agreed that certain dispositive issues could be addressed as a matter of law based solely on the pleadings and matters subject to judicial notice. The Developer filed a motion, essentially styled as a motion for judgment on the pleadings, contending that its rights had vested against the City as a matter of law and therefore Measure C could not be applied to the Project. The Developer relied on the text of Measure C, which expressly exempted any project as to which development rights had vested, and Government Code section 66498.1, which provides that a developer's rights against a local agency (such as the City) vest when the agency approves or conditionally approves a vesting tentative map. It is undisputed that the City approved the Map on June 23, 2016. The Developer also argued, as stated in the petition's second cause of action, that Measure C conflicts with the City Charter. Finally, the Developer asserted that Measure C is invalid as a matter of law under *Arnel Development Co. v. City of Costa Mesa* (1981) 126 Cal.App.3d 330, 337 (*Arnel*).[8]

---

[8] The arguments and ruling relating to the City Charter claim and the *Arnel* claim are relevant only to the challenge to the court's order on costs and attorney's fees. We provide additional detail regarding those issues in section 3, *post*.

With respect to the statutory rights claim, the City responded that even if it could not apply Measure C to the Project because the Developer's rights had vested against it, the Coastal Commission had the authority to apply Measure C to the Project in the future.

The Residents also opposed the Developer's motion, arguing the Developer could not have vested rights in the Project because, even as of the time the motion was filed, the Developer had not yet obtained all the necessary permits and approvals necessary to complete the Project. Further, the Residents claimed, Government Code section 66498.1, subdivision (b)—the code provision relied upon by the Developer as the basis for its vested rights claim—does not apply to any development situated in whole or in part in a designated coastal zone because that code section is superseded by the Coastal Act.

In addition, the parties disagreed as to whether the controversy was ripe for decision at that time. Both the City and the Residents argued the matter was not ripe for adjudication because Measure C had not yet been certified by the Coastal Commission and it was therefore unknown how, or even whether, Measure C might impact the Project. The Developer argued the controversy was ripe because the statute of limitations applicable to a challenge to a zoning ordinance is 90 days from the time the measure is enacted and as a result, it was required to challenge Measure C within that window of time.

4.  **The Court's Rulings and the Appeals**

After hearing oral argument on the motion for judgment on the pleadings, the court issued its final decision on March 22, 2018, finding that the Developer had obtained statutory vested rights against the City to proceed with the Project in accordance

11

with the Map. The court rejected the Developer's contentions that Measure C conflicted with the City Charter and was arbitrary, capricious, and discriminatory under *Arnel*.

As an initial matter, the court found the matter ripe for declaratory relief. The court rejected the City's contention that the matter was not ripe because it had not yet attempted to apply Measure C to the Project. Rather, the court found, the City had taken at least two actions adverse to the Project and the Developer with reference to Measure C: notifying the Developer that the passage of Measure C triggered the force majeure clause of the Agreement, which the City claimed would delay performance of the Agreement, and later terminating the Agreement.

On the issue of vested rights, the court noted Government Code section 66498.1 provides that "[w]hen a local agency approves or conditionally approves a vesting tentative map, that approval shall confer a vested right to proceed with development in substantial compliance with the ordinances, policies, and standards described in Section 66474.2." Further, the court observed that the Legislature, in adopting Government Code section 66498.1, intended to " 'enable the private sector to rely upon an approved vesting tentative map prior to expending resources and incurring liabilities without the risk of having the project frustrated by subsequent action by the approving local agency.' "

The parties agreed that the Map application was "deemed complete" by the City on June 23, 2016, and that the City, through the City Council, subsequently approved the Map by resolution on October 18, 2016. Moreover, the resolution explicitly affirmed the Developer's vested right to proceed with

12

the Project in substantial compliance with the ordinances, policies, and standards in effect at the time. And, the court stated, even the text of Measure C recognized that it would not affect any project for which development rights had vested.

The court, applying the plain language of Government Code section 66498.1 to those undisputed facts, concluded the Developer's rights vested on June 23, 2016, when its application for the Map was deemed complete by the City. Accordingly, the court found, those rights were unaffected by the passage of Measure C. The court entered judgment in favor of the Developer on May 7, 2018. The Residents filed a timely notice of appeal from the judgment.

As we explain in detail in section 3, *post*, the Residents subsequently submitted a request for costs under Code of Civil Procedure sections 1032 and 1033.5. After the Residents indicated they also planned to file a motion for attorney's fees under Code of Civil Procedure section 1021.5, the court requested briefing concerning the party or parties that would qualify as a "prevailing party" (costs) or a "successful party" (attorney's fees). The court concluded the Residents did not qualify as either a "prevailing party" or a "successful party" and entered an order to that effect on August 16, 2018. The Residents filed a timely notice of appeal from that order.

We have consolidated the two appeals for purposes of decision.

13

**DISCUSSION**

**1.** **The court did not err in finding that the Developer has statutory vested rights in the Waterfront Project.**

**1.1.** **Standard of Review**

The question presented turns on the interpretation of several statutory provisions. We review matters of statutory interpretation de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Nist v. Hall* (2018) 24 Cal.App.5th 40, 45.)

" ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) We begin by examining the statutory language because the words of a statute are generally the most reliable indicator of legislative intent. (*People v. Watson* (2007) 42 Cal.4th 822, 828; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.) We give the words of the statute their ordinary and usual meaning and view them in their statutory context. (*People v. Watson, supra*, at p. 828.) … "If the statute's text evinces an unmistakable plain meaning, we need go no further." (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 508.)' (*In re C.H.* (2011) 53 Cal.4th 94, 100.) ' "Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute." [Citation.]' [Citation.]" (*1550 Laurel Owner's Assn., Inc. v. Appellate Division of Superior Court* (2018) 28 Cal.App.5th 1146, 1152.)

### 1.2. Statutory Vested Rights

The basis of the Developer's claim to vested rights is found in Government Code section 66498.1 which provides in subdivision (b) (section 66498.1(b)): "When a local agency approves or conditionally approves a vesting tentative map, that approval shall confer a vested right to proceed with development in substantial compliance with the ordinances, policies, and standards described in Section 66474.2.[9] However, if Section 66474.2 is repealed, that approval shall confer a vested right to proceed with development in substantial compliance with the ordinances, policies, and standards in effect at the time the vesting tentative map is approved or conditionally approved." Thus, "[a]pproval of the vesting tentative map entitles the developer, subject to certain limitations, to proceed with the

---

[9] Government Code section 66474.2 provides: "(a) Except as otherwise provided in subdivision (b) or (c), in determining whether to approve or disapprove an application for a tentative map, the local agency shall apply only those ordinances, policies, and standards in effect at the date the local agency has determined that the application is complete pursuant to Section 65943 of the Government Code. [¶] (b) Subdivision (a) shall not apply to a local agency which, before it has determined an application for a tentative map to be complete pursuant to Section 65943, has done both of the following: [¶] (1) Initiated proceedings by way of ordinance, resolution, or motion. [¶] (2) Published notice in the manner prescribed in subdivision (a) of Section 65090 containing a description sufficient to notify the public of the nature of the proposed change in the applicable general or specific plans, or zoning or subdivision ordinances. [¶] A local agency which has complied with this subdivision may apply any ordinances, policies, or standards enacted or instituted as a result of those proceedings which are in effect on the date the local agency approves or disapproves the tentative map."

project 'in substantial compliance with the ordinances, policies, and standards' … in effect when the map application was deemed complete." (*Kaufman & Broad Central Valley, Inc. v. City of Modesto* (1994) 25 Cal.App.4th 1577, 1586.)

It is undisputed that the Developer submitted an application for a vesting tentative tract map to the City and that the City notified the Developer in writing on June 23, 2016 that the application was "deemed complete." Applying the plain meaning of the statute compels the conclusion that the Developer's right to proceed with the Project vested as to the City on June 23, 2016, well before City residents passed Measure C in March 2017.

We note that this application of the statute is consistent with the Legislature's stated intent, which is set forth in Government Code section 66498.9: "By the enactment of this article, the Legislature intends to accomplish all of the following objectives:

"(a) To establish a procedure for the approval of tentative maps that will provide certain statutorily vested rights to a subdivider.

"(b) To ensure that local requirements governing the development of a proposed subdivision are established in accordance with Section 66498.1 when a local agency approves or conditionally approves a vesting tentative map. The private sector should be able to rely upon an approved vesting tentative map prior to expending resources and incurring liabilities without the risk of having the project frustrated by subsequent action by the approving local agency, provided the time periods established by this article have not elapsed.

"(c) To ensure that local agencies have maximum discretion, consistent with Section 66498.1, in the imposition of conditions on any approvals occurring subsequent to the approval or conditional approval of the vesting tentative map, so long as that discretion is not exercised in a manner which precludes a subdivider from proceeding with the proposed subdivision."

Here, as noted, the City started to explore development in the Waterfront area by at least 2010, selected the Developer as its development partner in 2012, and entered into an exclusive negotiating agreement and then a memorandum of understanding with the Developer in 2013. The Developer represents that during this period it expended more than $14 million in Project-related costs. Finding that the Developer's rights against the City vested in mid-2016 after the City deemed the application for a vesting tentative tract map to be complete—and well after the Developer committed significant resources to the Project—fulfills the Legislature's stated desire to provide stability for the private sector. In other words, at this point in the Project, it was reasonable for the Developer to "be able to rely upon an approved vesting tentative map prior to expending [further] resources and incurring [additional] liabilities without the risk of having the project frustrated by subsequent action by the approving local agency[.]" (Gov. Code, § 66498.9, subd. (b).)

### 1.3. The Residents' arguments are without merit.

The Residents do not contend that section 66498.1(b) is ambiguous, or that the undisputed facts of this case compel a finding against the Developer. Instead, the Residents suggest that Government Code section 66498.6 and the Coastal Act render section 66498.1(b) inapplicable whenever a development includes an area of designated coastal zone. We disagree.

17

A brief discussion of the Coastal Act and the role of the Coastal Commission is of assistance. "The Coastal Act 'was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California. The Legislature found that "the California coastal zone is a distinct and valuable natural resource of vital and enduring interest to all the people"; that "the permanent protection of the state's natural and scenic resources is a paramount concern"; that "it is necessary to protect the ecological balance of the coastal zone" and that "existing developed uses, and future developments that are carefully planned and developed consistent with the policies of this division, are essential to the economic and social well-being of the people of this state... ." ([Pub. Resources Code,] § 30001, subds. (a) and (d).)' (*Yost v. Thomas* (1984) 36 Cal.3d 561, 565.) The Coastal Act is to be 'liberally construed to accomplish its purposes and objectives.' (Pub. Resources Code, § 30009.) Under it, with exceptions not applicable here, any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit 'in addition to obtaining any other permit required by law from any local government or from any state, regional, or local agency. ...' (*Id.*, § 30600, subd. (a).)" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793–794 (*Pacific Palisades*).)

As the Residents correctly explain, local agencies like the City, which include within their boundaries areas lying in whole or in part in the coastal zone, must develop a local coastal program that implements the requirements of the Coastal Act at the local level. The local coastal program includes a land use plan and zoning ordinances implementing that plan, all of which must

18

be consistent with the Coastal Act. (*Pacific Palisades, supra*, 55 Cal.4th at p. 794; Pub. Resources Code, §§ 30001.5, 30500–30526.) Any development in the coastal zone must comply with the local agency's local coastal program and the Coastal Act. (Pub. Resources Code, § 30600, subd. (a).)

At the state level, the Coastal Commission ensures that local agencies comply with the Coastal Act in a variety of ways. As pertinent here, the Coastal Commission must certify that a local agency's local coastal program complies with the Coastal Act before it can take effect. (Pub. Resources Code, § 30500, subd. (a).) Similarly, if a local agency attempts to amend its local coastal program by, for example, modifying an implementing zoning ordinance, the Coastal Commission must approve the modification before it can take effect. (*Id.*, § 30514, subd. (a).) The Coastal Commission also has jurisdiction to review the actions of a local agency to the extent it allows development in its coastal zone. For example, if a local agency issues a coastal development permit under its local coastal program, the Coastal Commission may, if the permitting decision is appealed, independently review the permit application to determine if it complies with the local coastal program and is consistent with the Coastal Act.[10] (Pub. Resources Code, § 30600.5, subd. (d).)

The Residents contend the Coastal Act precludes all statutory vested rights claims by a developer under section 66498.1(b), to the extent those claims relate to development in a coastal zone. They offer two alternative theories about why this is

---

[10] The Coastal Commission will reject an appeal, however, if it determines the appeal presents no substantial issue. (Pub. Resources Code, § 30600.5, subd. (d).)

so. First, the Residents contend that the Coastal Act—and specifically the provision for independent review of a local agency's land use decisions by the Coastal Commission—displaces section 66498.1(b). In other words, they argue section 66498.1(b) does not apply to any development project including areas of coastal zone because the local agency's decision-making is subject to review by the Coastal Commission. The Residents' second argument (which is essentially a variant of their first argument) relies on Government Code section 66498.6, which states that a developer that obtains vested rights under section 66498.1(b) is not exempt from compliance with federal and state law. Thus, they assert, where a development project implicates the Coastal Act, the Act regulates the local agency's actions exclusively, rendering section 66498.1(b) inapplicable.

The foundation of both the Residents' arguments rests on an untenable interpretation of section 66498.1(b). The Residents apparently assume that vested rights acquired under section 66498.1(b) would exempt a developer from compliance with *any and all* conceivably applicable land use laws and regulations, regardless of the source. They then argue that such a broad exemption from land use regulation predicated merely on a local agency's approval of a vesting tentative map could not possibly be the correct outcome.

Notably, the Developer does not advance this expansive interpretation of section 66498.1(b). Instead, the Developer argues only that a local agency cannot change its own ordinances and policies after it approves a vesting tentative map and then apply the new ordinances and policies to the previously approved development project. Indeed, the Developer concedes it is subject to the Coastal Act and the jurisdiction of the Coastal

20

Commission. As we will explain, this is precisely what section 66498.1(b) and related statutory provisions contemplate.

The essential defect in the Residents' arguments is that it conflates a *local* agency's enforcement of *local* ordinances and policies, which is subject to the vested rights provided under section 66498.1(b), with a developer's obligation to comply with *state* and *federal* laws and policies, which is not. The statutory scheme, however, clearly distinguishes between them.

As noted, section 66498.1(b) provides that a local agency's approval of a vesting tentative map confers on a developer a vested right to proceed with the contemplated project in accordance with then-existing local ordinances, standards, and policies. It is evident that section 66498.1(b) relates only to local ordinances, standards, and policies because, in the very next subdivision, the statute permits a local agency to infringe on the developer's vested rights to the extent required under state or federal law: "Notwithstanding subdivision (b), the local agency may condition or deny a permit, approval, extension, or entitlement if it determines … [t]he condition or denial is required in order to comply with state or federal law." (Gov. Code, § 66498.1, subd. (c)(2).) Should any doubt on this issue remain, Government Code section 66498.6 directly addresses the Residents' concern: "The rights conferred by this chapter shall relate only to the imposition by local agencies of conditions or requirements created and imposed by local ordinances. Nothing in this chapter removes, diminishes, or affects the obligation of any subdivider to comply with the conditions and requirements of any state or federal laws, regulations, or policies and does not grant local agencies the option to disregard any state or federal laws, regulations, or policies." (Gov. Code, § 66498.6, subd. (b).)

21

Here, as noted, section 66498.1(b) conferred vested rights on the Developer when the City deemed its application for a vesting tentative tract map to be complete. The City is therefore prohibited from applying subsequently amended local ordinances, standards, and policies—such as the amended ordinances contained in Measure C—to the Project. Indeed, the Legislature intended section 66498.1(b) to apply in the precise circumstance present here.

That is not to say, of course, that either the applicability of the Coastal Act or the oversight provided by the Coastal Commission is curtailed by the Developer's vested rights. California courts have consistently recognized the supremacy of the Coastal Act over matters of local concern and the cases cited by the Residents hold as much. *Pacific Palisades, supra*, 55 Cal.4th 783, upon which the Residents rely heavily, is the best example. There, our Supreme Court emphasized that " '[u]nder the Coastal Act's legislative scheme, ... the [local coastal program] and the development permits issued by local agencies pursuant to the Coastal Act are not solely a matter of local law, but embody state policy.' (*Charles A. Pratt Construction Co., Inc. v. California Coastal Com*. (2008) 162 Cal.App.4th 1068, 1075 [(*Pratt*)].) 'In fact, a fundamental purpose of the Coastal Act is to ensure that state policies prevail over the concerns of local government.' (*Ibid*.)" (*Pacific Palisades, supra*, 55 Cal.4th at p. 794.)

But contrary to the Residents' contention, the existence of the Coastal Act and its provision for oversight of local land use decisions in coastal zones do not *invalidate* section 66498.1(b)— the statutes simply coexist. None of the cases cited by the Residents holds otherwise, including *Pratt, supra*, 162 Cal.App.4th 1068, which the Residents describe as "on point."

22

There, as here, the developer claimed to have acquired vested rights under section 66498.1(b) regarding a development project. (*Pratt*, at p. 1073.) The County approved a vesting tentative map submitted by the developer and several parties appealed that decision to the Coastal Commission. (*Ibid*.) The Coastal Commission rejected the developer's vested rights claim and, in response to the developer's petition for writ of administrative mandamus, conceded that it did so based on state policies enacted after the vesting tentative map was filed. (*Id*. at p. 1074.) The developer appealed, citing section 66498.1(b). (*Pratt*, at pp. 1074–1075.)

The Court of Appeal affirmed, noting that state laws and policies are unaffected by section 66498.1(b). The court explained that "[a]lthough local governments have the authority to issue coastal development permits, that authority is delegated by the Commission. The Commission has the ultimate authority to ensure that coastal development conforms to the policies embodied in the state's Coastal Act." (*Pratt, supra*, 162 Cal.App.4th at pp. 1075–1076.) Those state policies prevail over local concerns in this arena. Accordingly, "[t]he Commission applies state law and policies to determine whether the development permit complies with the [local coastal program]. Under Government Code section 66498.6, subdivision (b), such state law and policies are not subject to the vesting provisions of Government Code section 66498.1, subdivision (b)." (*Id*. at p. 1076.)

Importantly, *Pratt* does not stand for the proposition advanced by the Residents here, namely that the Coastal Act preempts section 66498.1(b) when a development includes an area located in the coastal zone. Instead, *Pratt* clarified that

vested statutory rights flowing from a local agency's approval of a vesting tentative map bind the local agency—not the state. Here, the only question presented for our review is whether the City's approval of the Map binds the City. As we have explained, it does.

**2.** **The court properly concluded the vested rights issue was ripe for adjudication.**

The Residents also argue the court erred in concluding the Developer's statutory vested rights claim was ripe for adjudication. We disagree.

Whether a matter is ripe for adjudication is a question of law subject to our independent review. (*Communities for a Better Environment v. State Energy Resources Conservation & Development Com.* (2017) 19 Cal.App.5th 725, 732 (*Communities for a Better Environment*).) And whether a claim presents an "actual controversy" in order to qualify for declaratory relief pursuant to Code of Civil Procedure section 1060 is also a legal matter we review de novo. (*Communities for a Better Environment*, at p. 732) Once an actual controversy is found to exist, however, it is within the trial court's discretion to grant or deny declaratory relief and we review that decision for an abuse of discretion. (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885 (*Environmental Defense Project*).)

"The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.) Generally speaking, a controversy is ripe " 'when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and

24

useful decision to be made.' " (*Id*. at p. 171.) "In contrast, unripe cases are those ' "in which parties seek a judicial declaration on a question of law, though no actual dispute or controversy ever existed between them requiring the declaration for its determination." ' [Citation.]" (*Communities for a Better Environment, supra*, 19 Cal.App.5th at p. 733.)

Ripeness is often an issue when a litigant seeks declaratory relief pursuant to Code of Civil Procedure section 1060, as such relief is permissible to resolve "a probable future controversy relating to the legal rights and duties of the parties." (*Environmental Defense Project, supra*, 158 Cal.App.4th at p. 885.) But an action for declaratory relief must still involve an "actual controversy relating to the legal rights and duties" of the parties to the litigation. (Code Civ. Proc., § 1060; see also *Selby Realty Co. v. City of Buenaventura* (1973) 10 Cal.3d 110, 117 [under Code of Civil Procedure section 1060, an actual controversy "is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts"].)

Here, it is plain that an actual controversy over the Developer's statutory vested rights exists. As the court found, following the passage of Measure C, the City took the position that the Agreement's force majeure clause had been triggered and that some of the City's obligations under the Agreement might be impacted by Measure C. In doing so, the City suggested it believed the Project would be impacted by the amendments to the local coastal program contained in Measure C, a result necessarily in conflict with, and to the detriment of, the Developer's statutory vested rights under section 66498.1(b).

That circumstance virtually guaranteed a future controversy relating to the legal rights and duties of the parties. And indeed, substantial Project-related litigation has ensued.

The Residents offer two explanations why, in their view, this case does not present a ripe controversy. First, they argue that the Coastal Commission had not yet certified the amendments to the local coastal program embodied in Measure C and, therefore, the Developer had not yet exhausted its administrative remedies. In addition, the Residents claim this matter was not ripe because the Coastal Commission had not yet determined whether it would apply Measure C when it reviewed the City's decision to issue a coastal development permit for the Project. Both of these contentions miss the point.

The issue in the present case is not whether Measure C is valid. And although our decision in this appeal may inform the City and the Coastal Commission concerning the application of Measure C to the Project in future proceedings, we do not decide any specific issue regarding Measure C's applicability or viability. Instead, the narrow issue before us is whether, and when, the Developer's rights to proceed with the Project vested as against the City. And as to that question, an actual controversy plainly exits.

3.  **The court properly found that the Residents were not entitled to recover litigation costs or attorney's fees.**

The Residents contend they are entitled to recover their litigation costs and attorney's fees because, in their view, they prevailed on a majority of the issues presented in the motion for judgment on the pleadings. We disagree.

### 3.1. Additional Facts

As discussed *ante,* the court resolved the ripeness issue and the declaratory relief claim regarding statutory vested rights in favor of the Developer. The court rejected the Developer's alternative arguments that Measure C was arbitrary, capricious, and discriminatory under *Arnel* and that Measure C violated the City Charter. After the court ruled in favor of the Developer on its request for declaratory relief, the Developer dismissed its remaining claims without prejudice. The court entered judgment accordingly.

Following the entry of judgment, the Residents filed a memorandum seeking costs of $2,022.52. The Developer filed a motion to strike or tax costs arguing mainly that it, not the Residents, was the prevailing party in the litigation under Code of Civil Procedure section 1032. The Residents also filed an ex parte application signaling their intent to request attorney's fees under Code of Civil Procedure section 1021.5, the private attorney general fee statute. In addition, the Residents asked the court to postpone litigation over costs and fees until after the resolution of their appeal from the judgment.

The court denied the Residents' ex parte application but bifurcated the issue of which party or parties would qualify as the "prevailing party" for purposes of a cost award or a "successful party" for purposes of an attorney's fee award. The court asked all parties to brief that issue and set the matter for a hearing on August 16, 2018, at the same time the Developer's motion to strike or tax costs was to be heard.

The Residents argued they were entitled to recover costs and attorney's fees because they "prevailed on a majority of the principal disputed issues (two of three) the Court adjudicated on

27

the merits" and "vindicated the Redondo Beach electorate's constitutional right to vote on initiatives, and all Californians' rights of access to water-oriented recreation under the [Coastal Act], strengthened by Measure C." The Residents noted that they defeated two of the Developer's claims, i.e., that Measure C was invalid as a matter of law under *Arnel* and that Measure C violated the City Charter. And although the Residents acknowledged that the Developer prevailed on its statutory vested rights claim, they asserted their "briefing of relevant Coastal Act provisions and case law was instrumental in securing express statements from this Court narrowing the judicial declaration [the Developer] moved for under § 66498.1."

The Developer argued it was the successful and prevailing party in the litigation because it filed the petition after the passage of Measure C in order to ensure that Measure C would not be applied to the Project. The Developer succeeded by obtaining a declaration from the court stating that its rights against the City vested on June 23, 2016, prior to the passage of Measure C, and that it could proceed with the Project under the ordinances, policies, and standards in effect as of the vesting date.

The court agreed with the Developer. As the court put it, the Developer "sought to invalidate a law interfering with its development rights. The legal ground by which this interference was halted did not concern [the Developer], so long as its development rights were protected. [The Developer] achieved a declaration of this right." As to the Residents, the court noted "[t]heir primary goal in intervening was to defend Measure C and stop [the] Project." The Residents failed to achieve their desired

28

result. Accordingly, the court concluded the Residents were not entitled to either costs or attorney's fees.

### 3.2. The Residents are not entitled to recover attorney's fees under Code of Civil Procedure section 1021.5.

Code of Civil Procedure section 1021.5 is a discretionary fee-shifting provision. It provides, in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." "To the extent we construe and define the statutory requirements for an award of attorney's fees, our review is de novo; to the extent we assess whether those requirements were properly applied, our review is for an abuse of discretion. [Citations.]" (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1156; see also *Vargas v. City of Salinas* (2011) 200 Cal.App.4th 1331, 1339 (*Vargas*) [" '[W]hether a party has met the statutory requirements for an award of attorney fees is best decided by the trial court, whose decision we review for abuse of discretion.' "].)

A party[11] seeking an award of attorney's fees under Code of Civil Procedure section 1021.5 must establish that it is "a successful party" within the meaning of the statute. (See, e.g., *Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, 381 (*Ebbetts Pass*) ["A party seeking an award of section 1021.5 attorney fees must first be 'a successful party.' "]) "The term 'successful party,' as ordinarily understood, means the party to litigation that achieves its objectives." (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 571.) " 'In determining whether a plaintiff is a successful party for purposes of section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution." [Citation.] [¶] The trial court in its discretion "must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award" under section 1021.5. [Citation.]' [Citation.]" (*Id.* at p. 566.) " ' "The appropriate benchmarks in determining which party prevailed are (a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two." ' [Citation.]" (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1291.)

As noted, the court determined that the Developer unquestionably achieved its litigation aims. The Developer's goal, as reflected in the petition, was to obtain a ruling which would permit it to proceed with the Project without being forced to

---

[11] Intervenors are vested with the same rights as original parties and may seek attorney's fees under Code of Civil Procedure section 1021.5. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 87.)

comply with Measure C. To that end, the Developer asserted several causes of action based on the theory that Measure C was invalid per se. For example, the Developer claimed that Measure C exceeds the power of the electorate, conflicts with the City Charter, is unconstitutionally vague under the California Constitution, and conflicts with the City's general plan. Alternatively, the Developer claimed the application of Measure C to the Project, specifically, was unlawful. It urged, for example, that Measure C violated its substantive due process rights by interfering with its statutory vested rights. In addition to attempting to invalidate Measure C generally, the Developer sought to avoid its application. Specifically, the request for declaratory relief sought to establish, among other things, that Measure C could not be applied retroactively to the Project and that the Developer's rights had vested against the City on June 23, 2016. Success on any one of the claims contained in the petition would have achieved the Developer's litigation goal. And it did.

The resulting judgment also substantially changed the landscape on a practical level. Prior to the litigation, there was substantial disagreement as between the Developer, the City, and the Residents about the potential applicability of Measure C to the Project. And at the time the Developer initiated the present suit, the City had advised the Developer that the Project would be delayed due to Measure C's passage. Now, as a result of the Developer's suit, there is no uncertainty on the issue: Measure C cannot be applied to the Project. In short, a comparison of the situation immediately prior to the suit and the situation today compels the conclusion that the Developer is a

31

successful party within the meaning of the private attorney general statute.

The Developer's success notwithstanding, the Residents argue that they qualify as a successful party under Code of Civil Procedure section 1021.5. But unlike the Developer, the Residents did not accomplish their primary objective. When the Residents intervened in this lawsuit, they described their litigation goals, focusing primarily on the Developer's statutory vested rights claim: "Should the Court grant the moving parties leave to intervene, they will show that none of [Developer]'s causes of action have legal merit. Regarding [Developer]'s claim that [Measure C] interferes with vested development rights [the Developer] contends it obtained last year, the moving parties will show that those claims must fail because [coastal development permits] from the Coastal Commission are a sine qua non for the development [the Developer]'s project proposes at King Harbor; and that lacking such discretionary permits, [the Developer] has no vested development rights." They also asserted, more generally, that they sought to offer a "full and robust defense" of Measure C against the Developer's myriad attacks in order to protect the interests of the voters who passed the initiative— voters who presumably wanted to stop the Project. Declarations of individual intervenors also disclose that by participating in this litigation and defending Measure C against the Developer's attacks, the Residents sought to prevent the Project from moving forward. The declaratory relief obtained by the Developer plainly thwarts these stated goals.

Further, and as the court observed, the "before and after the litigation" analysis also undermines the Residents' claim of success. Prior to the litigation, the Residents sought to apply

32

Measure C to the Project. Now, the Developer has secured a judgment precluding the application of Measure C to the Project—a result directly contrary to the express goal of the Residents. The litigation substantially changed the legal relationships among the parties by resolving the conflict over Measure C.

Nevertheless, the Residents maintain that they are a "successful party" entitled to seek attorney's fees. It is true, as the Residents note, that "[a] favorable final judgment is not necessary; the critical fact is the impact of the action. (*Graham v. DaimlerChrysler Corp.*, supra, 34 Cal.4th at p. 565.) [Parties] may be considered successful if they succeed on any significant issue in the litigation that achieves some of the benefit they sought in bringing suit. (*Maria P. v. Riles*[, *supra,*] 43 Cal.3d [at p.] 1292.)" (*Ebbetts Pass, supra*, 187 Cal.App.4th at pp. 381–382.) The Residents contend the court failed to apply these legal principles when it noted that the Residents did not achieve their primary litigation goal—stopping the Project from going forward. Citing *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970 (*Sweetwater*), the Residents emphasize that in order to qualify as a "successful party," " 'a party need not prevail on every claim presented in an action' " and may instead be a party that "succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Although this principle is well established, it is inapplicable here and, in any event, *Sweetwater* is distinguishable.

In *Sweetwater*, the dispute concerned the unlawful operation of charter school facilities by one school district (Julian) within the geographical boundaries of a neighboring school

33

district (Sweetwater). Sweetwater filed a petition for writ of mandate seeking to prohibit Julian and its business partner, Diego Plus Education Corporation (Diego Valley), from operating its facilities within Sweetwater's boundaries. Sweetwater sought a peremptory writ of mandate directing Julian to set aside Diego Valley's charter, to exercise oversight of Diego Valley as required by law, to refrain from approving additional charter schools in Sweetwater's district, and to revoke Diego Valley's charter and prohibit it from operating charter schools in an unlawful manner. (*Sweetwater*, *supra*, 36 Cal.App.5th at p. 982.) Sweetwater also requested declaratory and injunctive relief prohibiting the unlawful charter school operations. (*Id*. at pp. 982–983.) Ultimately, the court did not order Julian to revoke the charter. And although the court commented that Diego Valley's operation of two facilities within Sweetwater's boundaries " 'would be in violation of the Education Code' " and a recent court decision, the court denied Sweetwater's petition as to Diego Valley because "ordering compliance with the law [would] be 'superfluous.' " (*Id*. at p. 983, italics omitted.) The court granted Sweetwater's request for injunctive relief, however, and prohibited Diego Valley from operating the charter school facilities within Sweetwater's boundaries. (*Id*. at p. 984.)

The court awarded Sweetwater attorney's fees under Code of Civil Procedure section 1021.5. Julian and Diego Valley appealed, arguing Sweetwater did not succeed on any of its claims and the court's order stating that Diego Valley's operations "would be" (rather than "was") a violation of the Education Code did not afford Sweetwater any clear form of relief. (*Sweetwater*, *supra*, 36 Cal.App.5th at pp. 984–985.) The Court of Appeal rejected this argument, noting mainly that

34

although Sweetwater did not obtain the majority of the relief it requested, the court's injunctive relief changed the legal relationship of the parties to the benefit of Sweetwater. Therefore, the court was within its discretion to find that Sweetwater was the successful party in the litigation. (*Id.* at p. 985.)

Relying on *Sweetwater*, the Residents urge that even though the court found in favor of the Developer on its statutory vested rights claim, *they* succeeded in the litigation by defeating two of the Developer's claims (the *Arnel* claim and the City Charter claim), securing a dismissal of the Developer's remaining claims, and obtaining a ruling clarifying that the City must abide by future Coastal Commission decisions.

We reject the Residents' argument for several reasons. Although the court had discretion to find that the Residents were partially successful for purposes of a fee award under Code of Civil Procedure section 1021.5, it was not required to do so. (E.g., *Sweetwater, supra*, 36 Cal.App.5th at p. 981 [" 'The pertinent question is whether the grounds given by the court for its [grant] of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of this case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute.' "].) Rather, as discussed *ante*, the court was required to take a pragmatic approach in determining success within the context of this litigation.

We see no abuse of discretion in the court's conclusion that, as a practical matter, the Residents failed to achieve any significant benefit through their participation in the lawsuit. The Residents' success on two of the three legal challenges to Measure

C has no practical impact in the context of this litigation: Measure C cannot be applied to the Project, notwithstanding the court's findings that Measure C is not arbitrary and discriminatory under *Arnel* and does not violate the City Charter. And unlike the situation in *Sweetwater*, where Sweetwater's partial success in the litigation effected a significant change in the legal relationship of the parties, here the Residents' success on two of the Developer's claims makes no difference in this regard.

Moreover, that the Developer voluntarily dismissed its remaining claims without prejudice—after it obtained the relief it sought—cannot reasonably be considered a "success" for the Residents within the meaning of the statute. Finally, the Residents' assertion that the judgment includes declaratory relief in *their* favor because it acknowledges that the City must comply with future Coastal Commission decisions is misplaced. The Developer never claimed it would be exempt from future Coastal Commission decisions and the primacy of the Coastal Act is well settled, as we have said. And the fact that the court may have accepted part of the Residents' legal argument does not convert their loss into success under Code of Civil Procedure section 1021.5. (See *Vargas, supra*, 200 Cal.App.4th at p. 1339 [noting that the plaintiffs obtained no relief and the opposing parties never changed their positions, and rejecting the plaintiffs' argument that the court's acceptance of part of their legal analysis supported a fee award under the private attorney general statute].)

### 3.3. The Residents are not prevailing parties entitled to recover litigation costs under Code of Civil Procedure section 1032.

Under Code of Civil Procedure section 1032, subdivision (b), the "prevailing party" in litigation is entitled to recover costs as set forth in Code of Civil Procedure section 1033.5. " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not … ." (Code Civ. Proc., § 1032, subd. (a)(4).)

As noted, the Residents filed a memorandum seeking to recover litigation costs. They argue the court erred in striking their cost memorandum and again assert that because they defeated two of the Developer's legal claims, the court should have apportioned costs among the parties by assessing their relative degrees of success. We reject this argument for two reasons. First, the Residents failed to request this relief in their opposition to the Developer's motion to strike or tax costs. Accordingly, they have forfeited the issue. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [noting "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].) Second, and in any event, the court did not abuse its discretion in finding that the Residents did not prevail in the litigation. As we have said, the Developer sought and obtained a ruling prohibiting the

37

application of Measure C to the Project. It prevailed. That the Residents successfully opposed the Developer's alternative theories for relief does not undermine that finding.[12]

---

[12] In light of our disposition, the Residents' motion to strike the City's respondent's brief filed October 29, 2019 is denied as moot.

## DISPOSITION

The judgment and the August 16, 2018 order are affirmed. Redondo Beach Waterfront, LLC shall recover its costs on appeal. The City shall bear its own costs on appeal.

## CERTIFIED FOR PARTIAL PUBLICATION

LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.