Filed 11/30/23  Taft v. Salinas CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| HEATHER TAFT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DAVID SALINAS et al.,<br><br>    Defendants and Respondents. | D081025<br><br><br>(Super. Ct. No.<br> 37-2020-00004999-CU-BT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Motion to dismiss denied; matter remanded with directions.

Pease Law and Bryan W. Pease; Law Offices of G. David Tenenbaum and G. David Tenenbaum for Plaintiff and Appellant.

The Najjar Law Firm and George Richard Najjar; Joseph Aliberti for Defendants and Respondents.

Plaintiff and appellant Heather Taft, as well as another individual plaintiff and a nonprofit entity, Companion Animal Protection Society, brought a private attorney general action against defendants and respondents David Salinas, National City Puppy, LLC, Broadway Puppies,

Pups & Pets, and The Puppy Store, LLC (collectively the Salinas defendants) as well as defendants and respondents Veronica Salinas, Ray Rothman and Alysia Rothman,[1] in part seeking to enjoin them from the retail sale of non-rescue puppies. Plaintiffs eventually obtained a preliminary injunction against the Salinas defendants. After defendants unsuccessfully moved to compel arbitration, the trial court at plaintiffs' request dismissed the underlying action without prejudice. Plaintiffs moved for attorney fees and costs under both Code of Civil Procedure[2] section 1021.5 and Civil Code section 1717, obtaining a $46,500 award against the Salinas defendants, but not against Veronica and the Rothmans.

Taft appeals from the attorney fee order. She does not challenge the amount of the award. Her sole contention is that for a variety of reasons, the court should have included Veronica and the Rothmans as additional parties and ordered them jointly and severally responsible for the attorney fees.

Salinas moves to dismiss the appeal. He points out the superior court did not enter judgment, and argues the attorney fee order challenged by Taft is not appealable under section 904.1. On the merits, defendants respond that Taft has waived her evidence-based arguments, she is not a "successful party" against Veronica and the Rothmans within the meaning of section 1021.5, and the court did not abuse its discretion by limiting the attorney fee order to the Salinas defendants, who were the parties against whom the preliminary injunction issued.

---

1      For clarity, we refer to defendant David Salinas at times as Salinas, Veronica Salinas as Veronica, and Alysia and Ray Rothman as the Rothmans.

2      Undesignated statutory references are to the Code of Civil Procedure.

We hold the trial court abused its discretion by not including Veronica and the Rothmans in its award of 1021.5 attorney fees to plaintiffs, who it correctly determined were successful parties within the meaning of section 1021.5. Veronica and the Rothmans qualify as "opposing parties" under that statute, warranting an attorney fee award against them. We remand the matter with directions that the court amend its order as set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2020, Taft, another individual and the nonprofit Companion Animal Protection society filed a private attorney general action (the Companion action) on behalf of themselves and the public against the Salinas defendants, Veronica and the Rothmans to enjoin illegal sales of puppies from mass puppy breeding operations or "mills."[3] They alleged causes of action for fraud and violations of the Consumer Legal Remedies Act (CLRA; Civ. Code, § 1750) and Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200), seeking injunctive relief under those laws. In part, plaintiffs alleged the defendants were operating in violation of a law, Health and Safety Code section 122354.5, banning the sale of nonrescue dogs, cats and rabbits in retail pet stores. They alleged defendants, including Pet Connect Rescue, Inc., a Missouri corporation, misrepresented to consumers in California that they were selling rescue puppies when in fact they were selling from puppy mills. In their UCL cause of action, plaintiffs alleged the Salinas defendants and Veronica were selling puppies obtained from brokers or breeders in violation of California law, and that Pet Connect Rescue, Inc. and the Rothmans were accomplices in a deliberate scheme to evade California law and sell puppy mill puppies in pet stores. The Salinas

_____

[3] Another entity, the Animal Protection and Rescue League, was the plaintiff in a related case.

3

defendants, Veronica and the Rothmans filed verified answers in the Companion case. That same month, the trial court in the related case heard arguments and issued a preliminary injunction against Salinas and National City Puppy, LLC., enjoining them from selling puppies.

In June 2020, Taft and the other plaintiffs in the Companion action obtained a temporary restraining order against the Salinas defendants barring their sale of puppies in San Diego County pending a hearing on a preliminary injunction. The court similarly temporarily enjoined Pet Connect Rescue, Inc. from doing business in California unless it came into compliance with California law. Ray Rothman is the President and a Board member of Pet Connect Rescue, Inc. Alysia Rothman is a board member of the same organization. Ray Rothman owns a transportation company that shipping brokers hire to deliver the puppies to retail stores.

The Salinas defendants, Veronica, and the Rothmans filed an opposition to plaintiffs' request for a preliminary injunction in the Companion case. They stated that Pet Connect Rescue, Inc. had been unable to obtain the sort of agreement that would put defendants into compliance with Health and Safety Code section 122354.5 and other applicable laws, and asked the court to maintain the terms of the temporary restraining order, which allowed them to seek ex parte relief if they believed they complied with California law. According to defendants, their stores were closed and employees had been terminated, but their "expectation [was] that [d]efendants will re-open as soon as the [COVID-19] pandemic abates." The defendants asked the court to order plaintiffs to file an undertaking in an amount sufficient to compensate them if the court determined plaintiffs were not entitled to an injunction. In reply, plaintiffs pointed out defendants were not contesting entry of a preliminary restraining order, and asked the court

4

to order them to "completely stop selling puppies in California, or at least until they are in full compliance with California law."

The court entered a preliminary injunction against the Salinas defendants ordering them to stop selling puppies in San Diego County forthwith, and prohibiting Pet Connect Rescue, Inc. from doing business in California unless it became compliant with California law. It did not grant injunctive relief against Veronica or the Rothmans.

In September 2020, the Salinas defendants, Veronica and the Rothmans unsuccessfully moved to arbitrate the claims in the Companion action, based on written adoption agreements with the plaintiffs.

In early 2021, the court set the matter for trial, but later continued the trial date to December 2021. In October 2021, defendants represented that the lawsuit was "over" as the Legislature had passed a new version of Health and Safety Code section 122354.5 effective January 1, 2021, which was an outright ban on retail puppy sales. They asserted their retail stores were permanently closed by the end of September 2020, and given the new law, they would not be returning to conduct business in California. Defendants sought to file a motion for summary judgment and to again continue the trial dates. The court granted the request.

In March 2022, plaintiffs in both the Companion action and the related action filed requests to dismiss the actions without prejudice. Due to the court's civil business office's issues with her fee waiver, Taft ultimately obtained an ex parte court order dismissing the case.

Taft and the other plaintiffs in the Companion action eventually moved under section 1021.5 to recover $158,263.13 in attorney fees against the Salinas defendants, Veronica, the Rothmans and Pet Connect Rescue, Inc. They also sought "fee shifting under Civil Code [section] 1717" under the

5

arbitration agreements, given that they had defeated the defendants' motion to compel arbitration. Plaintiffs accused the Salinas defendants of "obfuscat[ing] and delay[ing]" their attempt to obtain injunctive relief, and asserted the defendants continued to litigate the case to obtain six more months of illegal sales, during which plaintiffs said they "illegally sold about 4,000 more puppies at those four stores, fraudulently labeled 'rescues,' at a price of about $2,000 to $3,000 each, for total revenue of about $4 million more, until plaintiffs in the present case obtained the preliminary injunction stopping Salinas from selling puppies in San Diego County and stopping Pet Connect Rescue from supplying puppies statewide." Plaintiffs argued that with their preliminary injunction, they had achieved relief under the CLRA and UCL. Arguing Salinas and the Rothmans were "all receiving and paying compensation for obtaining puppies from breeders through their shell companies and passthrough entities, including through the named corporate [d]efendants, and then selling the puppies to customers such as Johnson and Taft," plaintiffs asserted they were entitled to recover attorney fees for stopping defendants' fraud and satisfied the criteria to obtain fees under section 1021.5.

The Salinas defendants, Veronica and the Rothmans opposed the motion. They argued that in September 2020, Salinas closed his California retail stores due to the COVID-19 pandemic and not because of the preliminary injunctions in effect. They argued plaintiffs' suit was not a catalyst, plaintiffs were not successful or prevailing parties under section 1021.5, plaintiffs' lawyers engaged in unnecessary and unreasonable litigation, and plaintiffs did not try to enforce their rights without litigation. Defendants argued the sought-after fees should be reduced for plaintiffs' counsel's "uncivil and improper tactics."

6

At the hearing on the motion in the Companion case, defense counsel pointed out that the preliminary injunction was issued against the Salinas defendants only. He argued the court should award attorney fees only as against the business entities, not against the individuals, Salinas, Veronica and the Rothmans. He argued: "There's no proof that—there was no proof of—there's no finding of alter ego by the court. There's no co-mingling. There is no disregard of the corporate formalities. There has been no proof of diversion of assets. Defendants maintained separate locations and separate records. The companies are still active. Again, they are owned by a corporate structure that's never been violated and it was perfectly legally set up . . . ." As for the Companion action, defense counsel further argued the "same thing," stating: "There's a proper corporate structure that's been set up. All of the books—we produced either in this case or one of the other cases all of the individual accountings for each store. Each store was held separately and they were accounted separately and taxed separately."

In response, plaintiffs' counsel argued: "So on the parties, this was an overall scheme by all of these defendants. The defendants have already stated in court papers that the only purpose of keeping these corporations open is for the litigation. If the court issues fees only against those corporations, they will simply close those corporations and they are done and they have essentially gotten away with millions of dollars' worth of consumer fraud and not had to pay any fees for the result that was ordered. [¶] This was a concerted scheme, not just by the corporations as an abstract, faceless entity, but by these individuals. And that's what the discovery showed. We have emails going back and forth between David Salinas and Ray Rothman saying, 'You have got to get these cooperative agreements. This is life or death of the business.' It was these individuals actively trying get these—

7

trying to trick these shelters." Plaintiffs' counsel continued to complain about defense counsel's conduct, and also asserted Ray Rothman was receiving funds via his wholly owned transport company that did not "actually exist physically" but merely served as a brokerage.

Following arguments, the court indicated it would grant plaintiffs attorney fees in a reduced amount. It took the matter under submission to consider which defendants would be subject to the attorney fee order.

The court ultimately awarded plaintiffs $46,500 in attorney fees under both section 1021.5 and Civil Code section 1717 based on the attorney fee provision in the arbitration agreement, but only against the Salinas defendants. In part, it ruled: "Plaintiffs are the successful part[ies] because they obtained a preliminary injunction which provided some of the relief sought in the case. [Citations.] Additionally, the court is satisfied that [d]efendants were on notice of [p]laintiffs' objections to their practices prior to the litigation. Plaintiffs enforced an important right affecting the public interest that was not being enforced by any public entity." The court declined to award fees for litigation after the preliminary injunction, ruling that plaintiffs' success was limited to the period between the preliminary injunction and a change in law that had rendered their lawsuit moot.[4] It further awarded plaintiffs their attorney fees spent on the motion to compel arbitration under the arbitration agreement's fee shifting provision. The court did not explain why it limited recovery of attorney fees as against only the Salinas defendants.

---

[4]     Because plaintiffs do not challenge the amount of the court's attorney fee award, we need not address the change in law.

8

DISCUSSION

I. *Motion to Dismiss Appeal*

Salinas has moved to dismiss the appeal on grounds there is no appealable judgment or order under section 904.1.  He points out Taft filed a case information statement in this court stating she appealed from an order after judgment, but that the register of actions shows the trial court entered a dismissal, not a judgment.  He cites no case authority to support his proposition, only the text of section 904.1, subdivisions (a)(1) and (a)(2).[5]

In opposition, Taft points out that *Gassner v. Stasa* (2018) 30 Cal.App.5th 346 holds a costs order is appealable as a final judgment when it follows a clerk-entered voluntary dismissal without prejudice.  Citing *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, she also argues the attorney fee order in this case is a judgment directing payment of money within the meaning of section 917.1, subdivision (a)(1).[6]  Taft says at most she checked the wrong box on the appellate form, as the attorney fees order is appealable as a final judgment.

---

[5]  The statute provides in part:  "An appeal, other than in a limited civil case, may be taken from any of the following:  [¶]  (1) From a judgment, except an interlocutory judgment, other than as provided in paragraphs (8), (9), and (11), or a judgment of contempt that is made final and conclusive by Section 1222.  [¶]  (2) From an order made after a judgment made appealable by paragraph (1)."  (§ 904.1, subd. (a).)

[6]  Taft does not explain and we are uncertain how appealability is affected by section 917.1, which specifies judgments and orders as to which perfecting of an appeal will not stay enforcement absent an undertaking.

9

In *Gassner*, our colleagues in Division Two held in view of a split of authority[7] that a costs order entered after a voluntary dismissal without prejudice was appealable. (*Gassner v. Stasa, supra*, 30 Cal.App.5th at p. 355.) The court explained that while a voluntary dismissal without prejudice is not a judgment and thus such a post-dismissal costs order is not appealable as a section 904.1, subdivision (a)(2) postjudgment order, such an order was the final determination of the parties' rights, and thus qualified as a judgment under subdivision (a)(1) of the statute. (*Id*. at p. 354.) In reaching its conclusion, *Gassner* distinguished a case involving an attorney fee award entered after a stipulated judgment. (*Ibid*.) It pointed out that there can be only one final judgment in a single action, but because a voluntary dismissal without prejudice is not a judgment, "it leaves the field open for a later costs order to be *the* final judgment." (*Ibid*.) Further, distinguishing situations involving orders on a motion to vacate a nonappealable judgment or order, *Gassner* reasoned that "reviewing a costs order after a voluntary dismissal does not require any review of the underlying dismissal. Thus, it presents no threat of back-door review of a nonappealable order." (*Id*. at pp. 354-355.) The court concluded: "[T]here is every reason to allow review of a costs order made after a voluntary dismissal. Such a costs order is not interlocutory; it cannot be reviewed in an appeal from some subsequent final judgment.

---

7       *Gassner* disagreed with *Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, which held an order on a motion to tax costs is not appealable when it follows a voluntary dismissal without prejudice. (*Gassner v. Stasa, supra*, 30 Cal.App.5th at p. 352, citing *Mon Chong*, at p. 92.) It found a different case—*Mesa Shopping Center-East, LLC v. O Hill* (2014) 232 Cal.App.4th 890—more persuasive, as the *Mesa Shopping Center* court recognized that a costs order entered after a voluntary dismissal without prejudice may be appealable on a theory that it is a final judgment.

10

There is a need for some kind of review, but there is no need for the speedy and often summary review that a writ petition entails." (*Id*. at p. 355.)

*Gassner*'s reasoning is sound. We see no reason why its holding should not apply to the attorney fee order here, as attorney fees authorized by statute constitute recoverable costs. (§ 1033.5, subd. (a)(10).) Like the post-dismissal costs order in *Gassner*, *supra*, 30 Cal.App.5th 346, the post-dismissal attorney fee order here is not interlocutory,[8] there will not be any appeal from some later final judgment, and it is the final determination of the parties' rights in this action. It is thus an appealable judgment under section 904.1, subdivision (a)(1). We deny Salinas's motion to dismiss.

## II. *Claim of Error in Omitting Defendants Victoria and the Rothmans from the Attorney Fee Judgment*

Taft contends the trial court should have included all of the defendants in the attorney fee judgment, not just the Salinas defendants. She argues: (1) all of the defendants moved to compel arbitration, which would have entitled them to attorney fees if they had prevailed under Civil Code section 1717; (2) nonsignatories are bound by an attorney fee provision in a contract when the nonsignatories stand in the shoes of the parties to the contract, making them liable for attorney fees if they would have been entitled to fees had they prevailed; and (3) all of the defendants opposed plaintiffs' action, including by moving to compel arbitration, and they were unified in interest

---

[8] Though the attorney fee order in this case is not interlocutory, it appears to meet all other requirements for an appealable collateral order, as it is "dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money" (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368), permitting a direct appeal. (See also *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1015-1016.) As the parties do not argue the collateral order doctrine, we do not resolve whether the attorney fee order falls within it.

11

such that they would be "opposing parties" within the meaning of section 1021.5.  Taft argues the evidence shows Veronica and Salinas owned all of the pet stores through a series of shell companies, and the Rothmans created a "fake" store as a way to launder puppies from the same puppy mill sources, thus "[t]here is no substantial evidence that these [d]efendants were uninvolved such that they were properly omitted from the judgment."  She asks us to remand the case with instructions to add Veronica and the Rothmans to the judgment.

Defendants argue Taft has waived any challenge to the trial court's evidentiary rulings, including by failing to identify the court's findings, set out legal argument, or provide separate headings or analysis.  They also argue plaintiffs were not successful parties under section 1021.5 as against Veronica and the Rothmans as they did not obtain preliminary injunctive relief against those parties.  Defendants maintain Taft has not established the court abused its discretion in limiting fees to the Salinas defendants.

1. *Standard of Review*

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion.  However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' [Citations.]  In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751; see also *Animal Protection & Rescue League v. City of San Diego* (2015) 237 Cal.App.4th 99, 105 (*Animal*

12

*Protection*).) Where the material underlying facts are largely not in dispute, we review the court's order de novo. (*Mountain Air*, at p. 751; see also *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 ["The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious"], fns. omitted.)

We acknowledge that " '[a] judgment or order . . . is *presumed correct*' " and "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent . . . ." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is Taft's burden to not only affirmatively show error (*ibid.*) but also to demonstrate the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) We review only the correctness of the court's ruling, not its rationale. (*Gordon v. ARC Manufacturing, Inc.* (2019) 43 Cal.App.5th 705, 710; see also *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 ["[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason"]; *Wolstoncroft v. County of Yolo* (2021) 68 Cal.App.5th 327, 347 [" 'There can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct' "].)

2. *Civil Code Section 1717 Provides No Basis to Add Victoria and the Rothmans to the Judgment*

Civil Code section 1717 provides in part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the

13

party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).) "[A] party who obtains an unqualified victory on a contract dispute . . . is entitled as a matter of law to be considered the prevailing party for purposes of [Civil Code] section 1717." (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 973.)

Taft has not shown that Civil Code section 1717 warrants including Victoria and the Rothmans in the attorney fee order on the theory that the motion to compel arbitration would have entitled these defendants to recover fees had they prevailed, pursuant to the fee provision in the arbitration agreement. Civil Code section 1717 applies only to an "action on a contract," and Taft does not explain in a meaningful way how a petition to compel arbitration falls into that category.[9]

Further, "fees under [Civil Code] section 1717 are awarded to the party who prevailed on the contract overall, not to a party who prevailed only at an interim procedural step." (*DisputeSuite.com, LLC v. Scoreinc.com*, *supra*, 2 Cal.5th at p. 977.) The *DisputeSuite.com* court approvingly discussed cases in the arbitration context, one of which held a plaintiff that had achieved an interim victory on a petition to compel arbitration was not the prevailing party on the contract within the meaning of Civil Code section 1717. (*Id.* at pp. 976-977, discussing *Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 537 [while a petition to compel arbitration is "a preliminary and analytically distinct proceeding in the lawsuit," such

---

9    Taft argues: "By bringing suit on the contract, Defendants cannot evade liability for fees on the contract." It is apparent Taft refers here to the petition to compel arbitration, and is not contending that her private attorney general action was an action on a contract for purposes of Civil Code section 1717 fees.

distinctions were not enough to treat it as a "distinct action" on a contract under Civil Code section 1717].)  Taft's success or the potential for success on Veronica and the Rothman's part at this interim stage does not warrant making them liable for attorney fees under Civil Code section 1717.  (Accord, *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [prevailing party determination is to be made by comparing the parties' relative degrees of success "upon final resolution of the contract claims"].)

3. *Taft Was Successful, and Victoria and the Rothmans Are Opposing Parties, Within the Meaning of Section 1021.5*

Section 1021.5 provides in part:  "Upon motion, a court may award attorneys' fees to a successful party against one or more *opposing parties* in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."  (Italics added.)  " 'Although the statute is phrased in permissive terms, a court's discretion to deny attorney's fees to a party that meets the statutory requirements of section 1021.5 is limited.  [Citation.]  Unless special circumstances would render an award of section 1021.5 fees *unjust*, fees must be awarded under the statute where the statutory criteria are met.' "  (*Burgess v. Coronado Unified School District* (2020) 59 Cal.App.5th 1, 7.)

"Section 1021.5 codifies the courts' 'traditional equitable discretion' concerning attorney fees [citation], and within the statutory parameters

15

courts retain considerable discretion. '[T]he Legislature has assigned responsibility for awarding fees under section 1021.5 "not to automatons . . . . , but to judges expected and instructed to exercise 'discretion.' " ' " (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251.) In making its decision, the court " 'must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory.' " (*Ibid.*; see also *McGuigan v. City of San Diego* (2010) 183 Cal.App.4th 610, 623.) We uphold the court's decision unless it has abused its discretion. (*Vasquez*, at p. 251.)

A successful party under section 1021.5 is generally the prevailing party; " 'that is, the party that " ' "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." ' [Citation.]" ' [Citation.] 'The party seeking attorney fees need not prevail on all its claims alleged in order to qualify for an award.' " (*McGuigan v. City of San Diego*, *supra,* 183 Cal.App.4th at p. 625; see also *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 983 (*Sweetwater Union*).) To determine whether a party was successful, the court looks to whether the party achieved its objectives or reached the " ' "sought-after destination" ' "; the " 'critical fact is the impact of the action, not the manner of its resolution.' " (*McGuigan*, at p. 626.)

"[O]nly an opposing party can be liable for attorney fees under section 1021.5." (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1176.) An "opposing party" is defined conventionally; it is the " 'defendant person or agency sued, which is responsible for initiating and maintaining actions . . . that are deemed harmful to the public interest and that gave rise to the

16

litigation.' " (*Animal Protection, supra*, 237 Cal.App.4th at p. 106, quoting *Connerly*, at p. 1177.) An opposing party is " 'a party whose position in the litigation was adverse to that of the prevailing party' " and "[a] finding of fault or misconduct by the opposing party is not required." (*Sweetwater Union, supra*, 36 Cal.App.5th at p. 983, quoting *Nestande v. Watson* (2003) 111 Cal.App.4th 232, 240-241.)

Here, the trial court correctly found plaintiffs to be successful parties for purposes of awarding attorney fees under section 1021.5. Citing only section 1021.5 for the proposition, defendants argue Taft was not successful, at least for purposes of making Veronica and the Rothmans liable for attorney fees, because she did not obtain any relief, interim or otherwise, against those defendants. Defendants similarly argue the trial court correctly limited the attorney fee award to the Salinas defendants, against whom it issued the preliminary injunction. In *Sweetwater Union*, this court rejected an identical argument: that because a plaintiff high school district did not prevail on any of its claims as to the defendant elementary school district, the high school district was not successful within the meaning of section 1021.5. (*Sweetwater Union, supra*, 36 Cal.App.5th at p. 983.) The plaintiff, however, was successful in enjoining another defendant from operating its charter schools. (*Id*. at p. 979.) We explained that "partial success is a factor to be considered" and the argument "ignore[d the] settled law that a party need not prevail on every claim to be considered a successful party under section 1021.5." (*Ibid*.; see also *McGuigan v. City of San Diego, supra*, 183 Cal.App.4th at p. 625 [" 'The party seeking attorney fees need not prevail on all its claims alleged in order to qualify for an award' " under section 1021.5].) That Taft was "unsuccessful in their TRO and preliminary injunction applications against Veronica . . . [and the Rothmans]" is of no

17

moment, as she succeeded on a significant issue, namely barring the Salinas defendants from selling puppies in this state in violation of California law.

We further conclude the court abused its discretion by omitting Veronica and the Rothmans from the order awarding attorney fees. Reviewing the court's order for abuse of discretion, we exercise our independent judgment as to its conclusions of law, as well as its application of the law to the material undisputed facts. (*Haraguchi v. Superior Court, supra*, 43 Cal.4th at p. 711; *Animal Protection*, *supra*, 237 Cal.App.4th at p. 106.) Applying the above-discussed legal standards to the undisputed facts here, Veronica and the Rothmans qualify as "opposing parties" within the meaning of section 1021.5 as to be liable for attorney fees. Their conduct gave rise to the litigation and they were party defendants fully engaged in it, filing verified answers to the complaint, opposing plaintiffs' petitions seeking injunctive relief, and moving to compel arbitration of plaintiffs' claims. They took positions adverse to Taft throughout, losing in their quest to avoid enjoining Salinas's retail sales and also failing to compel arbitration of the matter under the adoption agreements. They are respondents in this appeal.

Though Taft's arguments on this point are cursory, she cites relevant authority (*Connerly v. State Personnel Board*, *supra*, 37 Cal.4th 1169), and points out defendants "opposed [p]laintiffs at every step of the way, in lockstep," saying "[t]hey were all unified in interest, and none of them claimed to not be involved in the fraudulent scheme." She maintains "[t]heir only defense was to claim the scheme was not unlawful." Defendants do not challenge these specific assertions, and the record supports them as a matter of fact and law.

Accordingly, we direct the trial court to amend its order to award attorney fees under section 1021.5 as against defendants jointly and

18

severally.  (See *Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, 838 ["Treating the . . . section 1021.5 obligation of more than one opposing parties as joint is consistent with the purposes of that statute.  If the obligation is apportioned in the sense that it is not joint[,] the successful party faces greater difficulty in collection of the judgment for attorney's fees"].)

## DISPOSITION

The matter is remanded and the trial court directed to amend its attorney fee order to award plaintiff Heather Taft attorney fees under section 1021.5 jointly and severally against defendants David Salinas, National City Puppy, LLC, Broadway Puppies, Pups & Pets, The Puppy Store, LLC, Veronica Salinas, Ray Rothman and Alysia Rothman.  Taft shall recover her costs on appeal, including appellate attorney fees in an amount to be determined by the court.


O'ROURKE, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.

19